**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAUL HOROWITZ, as Sellers' Representative,<br><br>                    Plaintiff,<br><br>         v.<br><br>NATIONAL GAS & ELECTRIC, LLC and SPARK ENERGY, INC.,<br><br>                    Defendants. | NO. 17 CV 7742 (JPO) |

**DEFENDANTS NATIONAL GAS & ELECTRIC, LLC & SPARK ENERGY, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

**MORGAN, LEWIS & BOCKIUS LLP**

Kenneth I. Schacter
101 Park Avenue
New York, NY 10178
(212) 309-6000
kenneth.schacter@morganlewis.com

Troy S. Brown
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
troy.brown@morganlewis.com

Michelle Pector (*pro hac vice*)
1000 Louisiana St., Suite 4000
Houston, TX 77002
(713) 890-5000
michelle.pector@morganlewis.com

*Attorneys for Defendants National Gas & Electric, LLC and Spark Energy, Inc.*

## TABLE OF CONTENTS

**Page**

I. PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM IS A REPACKAGED CONTRACT CLAIM AND SHOULD BE DISMISSED ................................................. 2

II. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED ........................................................................................................ 6

    A. Plaintiff Is Barred From Bringing Any Claim Against Spark for Conduct Predating Its Purchase of Major Energy ................................................. 6

    B. Plaintiff Has Failed to Adequately Plead the Elements of His Claim ................... 7

    C. Spark's Conduct Is Privileged ................................................................. 8

III. PLAINTIFF'S DEMAND FOR SPECIAL DAMAGES IS BARRED ............................. 9

IV. CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Air China, Ltd. v. Kopf*,
    473 F. App'x 45 (2d Cir. 2012) ...................................................................................9

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*,
    47 A.D.3d 239 (1st Dep't 2007) .................................................................................10

*Banner Indus. of N.E., Inc. v. Wicks*,
    No. 11-CV-1537, 2013 WL 12250346 (N.D.N.Y. June 11, 2013) ........................2, 6

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*,
    259 F. Supp. 3d 16 (S.D.N.Y. 2017), *appeal docketed,* No. 17-966 (2d Cir.
    Apr. 6, 2017) ............................................................................................................8, 9

*Boehner v. Heise*,
    734 F. Supp. 2d 389 (S.D.N.Y. 2010) ..........................................................................8

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) .............................................................................................2

*CCM Rochester, Inc. v. Federated Investors, Inc.*,
    No. 14-CV-3600 (VEC), 2014 WL 6674480 (S.D.N.Y. Nov. 25, 2014) ..............4, 5

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*,
    68 N.Y.2d 954 (N.Y. 1986) .........................................................................................4

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*,
    224 F. Supp. 2d 520 (W.D.N.Y. 2002) ....................................................................3, 4

*Gate Techs., LLC v. Delphix Capital Mkts., LLC*,
    No. 12 Civ. 7075(JPO), 2013 WL 3455484 (S.D.N.Y. July 9, 2013) .......................2

*Health-Chem Corp. v. Baker*,
    915 F.2d 805 (2d Cir. 1990) .........................................................................................7

*In re CINAR Corp. Sec. Litig.*,
    186 F. Supp. 2d 279 (E.D.N.Y. 2002) .........................................................................6

*In re Delphi Corp.*,
    Nos. 08-01232-rdd, 08-01233-rdd, 2008 WL 3486615 (Bankr. S.D.N.Y. Aug.
    11, 2008) .......................................................................................................................9

*Lan Sang v. Ming Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013) ..........................................................................7

*Low v. Robb*,
   No. 11-CV-2321 (JPO), 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ......................................6

*Masefield AG v. Colonial Oil Indus.*,
   No. 05 Civ. 2231(PKL), 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ......................................8

*MDC Corp. v. John H. Harland Co.*,
   228 F. Supp. 2d 387 (S.D.N.Y. 2002)......................................................................................9

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
   500 F.3d 171 (2d Cir. 2007)..................................................................................................2, 4

*MTI/Image Grp., Inc. v. Fox Studios E. Inc.*,
   262 A.D.2d 20 (1st Dep't 1999) ..............................................................................................9

*Osan Ltd. v. Accenture LLP*,
   454 F. Supp. 2d 46 (E.D.N.Y. 2006) .......................................................................................4

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017)......................................................................................4

*Process Am., Inc. v. Cynergy Holdings, LLC*,
   839 F.3d 125 (2d Cir. 2016)....................................................................................................9

*Prospect Funding Holdings, LLC v. Vinson*,
   256 F. Supp. 3d 318 (S.D.N.Y. 2017)..................................................................................7, 8

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
   992 F. Supp. 2d 213 (S.D.N.Y. 2013)......................................................................................7

*Trend & Style Asia HK Co. v. Pacific Worldwide, Inc.*,
   No. 14-cv-9992 (SAS), 2015 WL 4190746 (S.D.N.Y. July 10, 2015)....................................5

*VR Optics, LLC v. Peloton Interactive, Inc.*,
   No. 16-CV-6392 (JPO), 2017 WL 3600427 (S.D.N.Y. Aug. 18, 2017) .................................9

*W.B. David & Co. v. DWA Commc'ns, Inc.*,
   No. 02 Civ. 8479(BSJ), 2004 WL 369147 (S.D.N.Y. Feb. 26, 2004) ..................................3, 4

*Wall v. CSX Transp., Inc.*,
   471 F.3d 410 (2d Cir. 2006).....................................................................................................2

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
   8 N.Y.3d 422 (N.Y. 2007) .................................................................................................. 8-9

Plaintiff's Opposition does not and cannot remedy the flaws that doom his fraudulent inducement and tortious interference claims.  Despite Plaintiff's legal conclusions and buzzwords about "preconceived and undisclosed intentions," his wordplay does not alter the fact that Plaintiff's allegations sound in contract, not tort.  Setting aside Plaintiff's implausible rhetoric about a so-called fraudulent scheme, this imagined "scheme" boils down to the allegation that NGE promised to operate Major Energy in a "business-as-usual" manner, *i.e.*, as a private entity, during the deferred payment period, when it allegedly had no intention to do so.[1]  Dismissal, with prejudice, of the fraudulent inducement claim is required because the totality of the purported fraud is NGE's supposed intention not to deliver on promises memorialized in and evident from the contracts NGE executed when it bought Major Energy.

Similarly, Plaintiff's clarification that his tortious interference claim is premised *solely* on Spark's conduct prior to its purchase of the Major Energy equity interests from NGE likewise does not insulate that claim from dismissal for three reasons.  *First*, Paragraph 7.14(c) of the MIPA bars Plaintiff from asserting any claim arising out of or relating to the MIPA against any entity that is not a party to that agreement.  Because Plaintiff insists his claim is based *solely* on conduct before Spark could be deemed a party to the MIPA, his claim is barred by that agreement.  *Second*, Plaintiff fails to adequately allege an essential part of a tortious interference claim:  the requirement that Spark "intentionally and improperly procured the breach of the contract."  *Third*, while the Court need not reach this argument, Spark was nonetheless privileged to interfere with NGE's contract with Sellers as a result of its economic interest in NGE's business (not to facilitate its own economic interests).

---

[1] Capitalized terms are as used in Defendants' opening briefing in support of their Motion to Dismiss the Amended Complaint, ECF No. 27.  Cites to "Opp." are to Plaintiff's Opposition thereto, ECF No. 28.

**I.     PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM IS A REPACKAGED CONTRACT CLAIM AND SHOULD BE DISMISSED.**

Although Plaintiff accuses NGE of "misstat[ing] the nature of Plaintiff's fraud claim and New York law," *see* Opp. at 3, in fact, it is Plaintiff who has ignored or mischaracterized relevant precedent and who tries to transform his allegations into something they are not. Plaintiff glosses over the well-established law, detailed at length in Defendants' opening brief, that "allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support a fraud claim" under New York law. *Banner Indus. of N.E., Inc. v. Wicks*, No. 11-CV-1537, 2013 WL 12250346, at *3 (N.D.N.Y. June 11, 2013); *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *see Gate Techs., LLC v. Delphix Capital Mkts., LLC*, No. 12 Civ. 7075(JPO), 2013 WL 3455484, at *6 (S.D.N.Y. July 9, 2013). Instead, Plaintiff asserts it is well-settled that "parallel fraud and contract claims may be brought" without acknowledging the narrow circumstances identified in *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996) under which such "parallel" claims may proceed. Opp. at 12 (citing *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007)). But Plaintiff does not, and cannot, satisfy *any* of *Bridgestone/Firestone*'s narrow exceptions to the rule that a plaintiff cannot base a fraud claim on the facts that underlie his contract claim.

To bring parallel contract and fraud claims, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under contract, (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages caused by the fraud and otherwise unrecoverable as contract damages. *Bridgestone/Firestone*, 98 F.3d at 20. Plaintiff tacitly admits that he has not pleaded, and cannot credibly plead, the existence of any duty owed by NGE to Sellers or that Sellers suffered any special damages caused by the alleged misrepresentation and that are otherwise unrecoverable in contract.

Consequently, Plaintiff's attempt to save his fraudulent inducement claim hinges on the untenable contention that the claim is based on a false representation "collateral or extraneous to the contract." Opp. at 12. But Plaintiff has not alleged and cannot allege, either plausibly or with the requisite particularity, any fraudulent misrepresentation that is *collateral or extraneous* to the contracts at issue because he has not alleged, and could not allege, that NGE "promise[d] to do something *other than* what is expressly required by the contract." *W.B. David & Co. v. DWA Commc'ns, Inc.*, No. 02 Civ. 8479(BSJ), 2004 WL 369147, at *5 (S.D.N.Y. Feb. 26, 2004) (emphasis added); *Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, 224 F. Supp. 2d 520, 528 (W.D.N.Y. 2002). To the contrary, the only identified misrepresentation underlying Plaintiff's fraudulent inducement claim is the allegation that NGE falsely stated it would continue operating Major Energy in the manner in which it had historically been operated— namely, as a private entity—for the upcoming three-year earnout period, notwithstanding its purported intention to do the opposite.[2] Opp. at 11. As Plaintiff readily admits, however, NGE's alleged "agreement to keep Major Energy operating as a private company at least during the almost three year deferred payment period *is evident from the acquisition documents executed by the Sellers and NGE*." (Am. Comp. ¶ 61 (emphasis added); *id.* ¶¶ 62-63). In other words, the "essential" promise that NGE purportedly had no intention of fulfilling was one that the parties *expressly memorialized* in various provisions of their fully integrated agreements. (*Id.* ¶¶ 41, 48, 61, 62, 68, 91, 101, 119 & pp. 19-21 (Headings E, F)). Plaintiff thus cannot escape the conclusion that his fraudulent inducement claim is premised on the theory that NGE allegedly

---

[2] The Opposition asserts that Plaintiff's fraudulent inducement claim is premised on "NGE's undisclosed fraudulent scheme and inducement of the Sellers to sell Major Energy and defer a significant portion of the $80 million purchase price by means of knowingly false representations and promises." Opp. at 11. But, Plaintiff grounds Count I on NGE's purported promise that it would operate Major Energy as a private company in a "business-as-usual manner" during the deferred payment period (Am. Compl. ¶¶ 59, 61, 62, 63, 121, 124), and in the same breath, expressly pleads that the agreements fully incorporate all of NGE's alleged pre-contractual promises.

promised to perform under the MIPA and Earnout Agreements, but purportedly "never had any intention of doing so." (*Id.* ¶ 124.) This dooms Plaintiff's attempt to plead a misrepresentation "collateral or extraneous to" the contracts. *W.B. David*, 2004 WL 369147, at *5.

Plaintiff's conclusion that NGE had a "preconceived and undisclosed intention" not to fulfill its alleged promise does not change the outcome. While fraudulent misrepresentations can consist of either promises to do something in the future or misstatements of present fact, *Frontier-Kemper*, 224 F. Supp. 2d at 528; *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 492 (S.D.N.Y. 2017), Plaintiff's case is premised on prospective promises—*i.e.*, how NGE would run Major Energy *in the future*, after closing. *See Osan Ltd. v. Accenture LLP*, 454 F. Supp. 2d 46, 54-55 (E.D.N.Y. 2006);[3] *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (N.Y. 1986); *Merrill Lynch*, 500 F.3d at 184. Simply concluding, without more, that NGE had a "preconceived and undisclosed intention" not to perform does not convert NGE's purported misrepresentation about the future operation of Major Energy into a false statement of present fact. In any case, nothing in the Original Complaint, the Amended Complaint, or the Opposition substantiates Plaintiff's suggestion of a "preconceived and undisclosed" fraudulent intent with adequate factual allegations.[4] This failing alone forecloses Plaintiff's claim.

The case law Plaintiff cites is inapposite. In *CCM Rochester, Inc. v. Federated Investors, Inc.* (Opp. at 14-15), the court denied the motion to dismiss the fraudulent inducement claim where the pleading alleged that plaintiff had been induced to execute an asset purchase agreement featuring certain contingent earn-out payments by defendant's representations that it

---

[3] Plaintiff fails to avoid *Osan*, which did not turn on a "failure to pay or properly calculate the earnout" (Opp. at 13 n.5), but instead on plaintiff's failure to allege any misrepresentations **collateral or extraneous** to the parties' contract. *Osan*, 454 F. Supp. 2d at 54-55.

[4] The only support for Plaintiff's claim that "NGE had the preconceived intention of transitioning and selling Major Energy to Spark, a public entity, shortly after closing" is the so-called "indisputable fact" that NGE began working on the sale of Major Energy equity to Spark "just weeks after closing and completed the sale within a mere few months of closing." Opp. at 11-12.

would use its best efforts to market the plaintiff's products.  No. 14-CV-3600 (VEC), 2014 WL 6674480, at *2-3, *7 (S.D.N.Y. Nov. 25, 2014) ("In short, CCM's claim of fraud is at the edge of plausibility. . . ."). The *CCM Rochester* court found that the complaint alleged with particularity specific misrepresentations of fact—in response to an RFP and during an in-person meeting—that showed a fraudulent motive.  No such showing is or could be offered here.

Even more significantly, the contract at issue in *CCM Rochester **did not memorialize*** the promises on which the plaintiff's fraudulent inducement claim was based.  There, the plaintiff asserted two claims for breach of contract, both of which were premised on the alleged breach of implied, not express, duties.  *Id.* at *5-6.  And that court expressly noted that, "the terms of the [contract] do not impose any obligation on [defendant] to develop a specific plan to market or distribute CCM's investment products."  *Id.* at *6.  Unlike here, the fraudulent inducement claim was premised on promises that were truly collateral or extraneous to the contract.  *Id.* at *4.

Similarly, Plaintiff cites *Trend & Style Asia HK Co. v. Pacific Worldwide, Inc.* for the proposition that "[i]t does not seem to matter that the alleged fraudulent representation is virtually identical to the promise contained in the contract as long as it is made at a different time and place." Opp. at 16 (citing No. 14-cv-9992 (SAS), 2015 WL 4190746, at *8 n.103 (S.D.N.Y. July 10, 2015)).  Plaintiff's reliance on *Trend & Style* is actually a ***concession*** that his tort and contract claims are based on same alleged promises.  There, the court permitted fraud and contract claims to proceed where the fraud claim was based on an oral assertion that went beyond the four corners of the contract because the alleged misrepresentations "***were made well after the alleged formation of the contracts***." *Trend & Style*, 2015 WL 4190746, at *8 n.104 (emphasis added).  Obviously, misrepresentations made ***after*** the formation of a contract are

irrelevant to a claim of fraudulent inducement.  *See Banner Indus.*, 2013 WL 12250346, at *4.  The other cases Plaintiff relies on are equally unavailing.[5]

Neither Plaintiff's amended pleading nor his Opposition has changed the inescapable fact that the essence of his fraudulent inducement claim is identical to that of his contract claim.  *See Low v. Robb*, No. 11-CV-2321 (JPO), 2012 WL 173472, at *1 (S.D.N.Y. Jan. 20, 2012).  For that reason, this Court should dismiss Count I of the Amended Complaint with prejudice.

## II. PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED.

### A. Plaintiff Is Barred From Bringing Any Claim Against Spark for Conduct Predating Its Purchase of Major Energy.

Plaintiff tries at length to re-plead his tortious interference claim against Spark through briefing, and emphasizes that it is asserted as an alternative to his contract claim and is premised exclusively on Spark's alleged conduct "***prior to*** its purchase of Major Energy from NGE and any resulting assignment of the Agreements."  Opp. at 16; *id.* at 17, 22.  In doing so, Plaintiff dooms his claim, because Section 7.14(c) of the MIPA expressly bars Plaintiff from asserting a claim arising out of or relating to the parties' agreement against any entity that is not a party:

> All claims or causes of action (whether in contract or in tort, in law or in equity) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any representation or warranty made in connection with this Agreement or as an inducement to enter into this Agreement), may be made only against the Persons that are Parties hereto.  No Person who is not a named party to this Agreement, including any Affiliate, agent, attorney, or representative of any Party (such Persons, "Non-Party Affiliates"), shall have any liability (whether in contract or tort, in law or in equity, or based upon any theory that seeks to impose liability of an entity party against its owners or Affiliates) for any obligations or liabilities arising under, in connection with, or related to this Agreement or for any claim based on, in respect of, or by reason of this Agreement or its negotiation or execution, and each Party waives and releases all such liabilities, claims, and

---

[5] The court in *In re CINAR Corporation Securities Litigation* permitted a fraud claim to proceed where the allege misrepresentations were "ones of present fact and not of future intention," inasmuch as the contested statements "concerned the present financial status of the Company and did not conceal an intention to shirk their contractual obligations."  186 F. Supp. 2d 279, 302 (E.D.N.Y. 2002).  Such statements of present fact—concerning a company's financial condition—are a far cry from the statements of future intention on which Plaintiff bases his claim.

>obligations against any such Non-Party Affiliates. Non-Party Affiliates are expressly intended as third party beneficiaries of this provision of this Agreement.

(Am. Compl., Ex. A. ¶ 7.14(c)). Paragraph 7.14(c) makes clear that Plaintiff may only bring claims arising out of or relating to the MIPA against the "Persons that are Parties" to the MIPA. (*Id.*) Because Plaintiff bases his tortious interference claim on Spark's conduct ***prior to*** its purchase of the equity interests in Major Energy, and thus before Spark was a party to the MIPA (*see* Opp. at 16-19), under Paragraph 7.14(c), the Court should dismiss Count IV with prejudice.

### B. Plaintiff Has Failed to Adequately Plead the Elements of His Claim.

Furthermore, Plaintiff fails to adequately allege the elements required to maintain a claim of tortious interference—specifically, an allegation that Spark "intentionally and improperly procured the breach of the contract." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 527 (S.D.N.Y. 2013) (Oetken, J.). To do so, "it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third[-]party's contract with the plaintiff; instead, the evidence must show that the defendant's objective was to procure such a breach." *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013); *see Health-Chem Corp. v. Baker*, 915 F.2d 805, 809 (2d Cir. 1990) ("[T]he interference must be intentional and not incidental to some other lawful purpose."). This element is not satisfied where a plaintiff alleges merely that defendant knew of the possibility or even likelihood of the third-party's breach, but fails to allege that defendant ***intentionally procured*** the breach. *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327-28 (S.D.N.Y. 2017).

Here, Plaintiff has not alleged with the requisite particularity that Spark intentionally and improperly procured the alleged breach of NGE's contract with Plaintiff. Rather, Plaintiff alleges that Spark was aware of the provision in the MIPA that required NGE to obtain the Sellers' approval before selling its ownership interest in Major Energy. (Am. Compl. ¶¶ 72-73,

145-47.) Plaintiff does not allege, for example, that Spark discouraged NGE from complying or directed NGE not to comply with this provision in the MIPA. *See Boehner v. Heise*, 734 F. Supp. 2d 389, 404 (S.D.N.Y. 2010). In fact, Plaintiff does not describe *any* conduct of Spark's that prevented NGE from seeking or receiving the consent Plaintiff contends was required. Plaintiff has alleged only that Spark had knowledge of the condition in the MIPA that NGE receive the Sellers' consent before assigning certain rights and obligations to Spark under the MIPA. It is well-established that a third party's knowledge of a potential or likely breach of a contract does not amount to that party's—here, Spark's—intentional procurement of a breach. *Prospect Funding Holdings*, 256 F. Supp. 3d at 328. Plaintiff's tortious interference claim against Spark should be dismissed for this independent reason.

C. **Spark's Conduct Is Privileged.**

Finally, while the Court need not reach this issue, Plaintiff's tortious interference claim also fails because, as a matter of law, Spark was privileged to interfere with NGE's contract with Sellers as a result of its economic interest in NGE's affairs. *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 29-30 (S.D.N.Y. 2017), *appeal docketed,* No. 17-966 (2d Cir. Apr. 6, 2017). Plaintiff admits that Spark and NGE are affiliated entities, with shared leadership, that coexist within the same corporate family. (Am. Compl. ¶¶ 11, 12, 68, 73, 118; Opp. at 20.) Although Plaintiff contends the economic interest defense is only available to parties with a direct ownership in the other, the case law is not so limited.[6] Courts routinely agree that closely related affiliates like Spark and NGE can have an economic interest sufficient to assert an economic interest defense. *See, e.g.*, *White Plains Coat & Apron Co., Inc. v. Cintas*

---

[6] Indeed, the *Masefield* court rejected this view, stating that "[a]lthough many of the cases involving the economic interest defense . . . have involved parent-subsidiary relationships, the Court is aware of no authority suggesting that the defense should be limited to that circumstance. Nor can the Court conceive of a justification" for such a limitation. *Masefield AG v. Colonial Oil Indus.*, No. 05 Civ. 2231(PKL), 2006 WL 346178, at *8 (S.D.N.Y. Feb. 15, 2006) (footnote omitted).

*Corp.*, 8 N.Y.3d 422, 426 (N.Y. 2007) (providing non-exhaustive list of scenarios in which economic interest defense applied); *MTI/Image Grp., Inc. v. Fox Studios E. Inc.*, 262 A.D.2d 20, 23-24 (1st Dep't 1999) ("the named companies are affiliated with [allegedly breaching party], either as parent or sister companies, and thus had an economic interest").  Because Spark was a closely related affiliate acting in furtherance of its interest in NGE,[7] Plaintiff's tortious interference claim against Spark also fails pursuant to the economic interest defense.[8]

### III.    PLAINTIFF'S DEMAND FOR SPECIAL DAMAGES IS BARRED.

Paragraph 9.9 of the MIPA, which limits the type of relief available to Plaintiff, applies broadly to all claims arising out of the transaction documents.  Plaintiff does not dispute that courts routinely enforce liability limitation provisions like the one in the MIPA when contracted by sophisticated parties like the Sellers and NGE.  *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 138 (2d Cir. 2016).  Indeed, Plaintiff focuses his resistance to application of this limitation on his claim against Spark, and effectively concedes that, with respect to NGE, an undisputed party to the transaction documents, Section 9.9 bars his claim for special damages absent some plausible allegation of that defendant's conduct "'smacks of intentional wrongdoing' and amount[s] to egregious intentional misbehavior."  *Air China, Ltd. v. Kopf*, 473 F. App'x 45, 49 (2d Cir. 2012) (quoting *Kalisch-Jarcho, Inc. v. City of N.Y.*, 58 N.Y.2d 377, 385 (N.Y. 1983)).  Here, Plaintiff has not adequately alleged that NGE's conduct amounted to "egregious intentional misbehavior" to justify disregarding Section 9.9.  *Cf. In re Delphi Corp.*,

---

[7] The facts here are distinguishable from *VR Optics, LLC v. Peloton Interactive, Inc.*, where this Court declined to dismiss at the pleading stage a tortious interference claim based on the economic interest defense.  There, the very parties who sought to rely on the economic interest defense admitted that their actions "were for their own economic interest."  No. 16-CV-6392 (JPO), 2017 WL 3600427, at *5-6 (S.D.N.Y. Aug. 18, 2017).  Here, to the contrary, Spark has made no such concession, and Plaintiff acknowledges Spark's affiliation and shared leadership with NGE.
[8] Plaintiff also has failed to plausibly allege that Spark acted maliciously, fraudulently, or illegally as needed to overcome the economic interest defense.  *Benihana*, 259 F. Supp. 3d at 30.  Plaintiff's single invocation of the word "maliciously" to describe Spark's alleged conduct does not suffice and is distinguishable from cases in which malice was adequately alleged.  *E.g.*, *MDC Corp. v. John H. Harland Co.*, 228 F. Supp. 2d 387, 398 (S.D.N.Y. 2002).

Nos. 08-01232-rdd, 08-01233-rdd, 2008 WL 3486615, at *7 (Bankr. S.D.N.Y. Aug. 11, 2008) (refusing to enforce exculpatory clause against defendant whose "secret efforts" to sabotage debtor's efforts to obtain alternate financing may "rise to the level of a bankruptcy crime"); *Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*, 47 A.D.3d 239, 242 (1st Dep't 2007) (refusing to enforce exculpatory clause against defendant whose conduct the court found amounted "to extortion"). As set forth in Section I, Plaintiff's allegations of misconduct as to NGE are entirely duplicative of his breach of contract claim and fall far short of the type of egregious conduct that could ever justify exception from the application of Section 9.9.

Plaintiff is likewise barred from seeking special damages against Spark. As detailed in Section II.A, given Plaintiff's new insistence that his tortious interference claim is based solely on Spark's alleged conduct ***prior to*** its purchase from NGE of the equity interests in Major Energy, *i.e.*, at a time when Plaintiff concedes Spark was not a party to the MIPA, it necessarily follows that any claim Plaintiff may have against Spark arising from the parties' agreements (and thus any demand for special damages) is foreclosed by Paragraph 7.14(c) of the MIPA. Accordingly, at a minimum, Plaintiff's request for special damages as against NGE and Spark must be stricken irrespective of whether either or both non-contract claims survive this Motion.

## IV. CONCLUSION

For the reasons set forth here and more fully in their opening brief, Defendants respectfully request that this Court dismiss Counts I and IV of Plaintiff's Amended Complaint with prejudice, and strike Plaintiff's request for damages beyond those direct compensatory damages permitted by the MIPA and Earnout Agreements. Because Plaintiff has already amended once following Defendants' initial motion, such dismissals should be with prejudice.

Dated:  March 1, 2018                                  Respectfully submitted,

                                                       **MORGAN, LEWIS & BOCKIUS LLP**

                                                       */s/  Kenneth Schacter*
                                                       Kenneth I. Schacter
                                                       101 Park Avenue
                                                       New York, NY 10178
                                                       (212) 309-6000
                                                       kenneth.schacter@morganlewis.com

                                                       Troy S. Brown
                                                       1701 Market Street
                                                       Philadelphia, PA 19103
                                                       (215) 963-5000
                                                       troy.brown@morganlewis.com

                                                       Michelle Pector (*pro hac vice*)
                                                       1000 Louisiana St., Suite 4000
                                                       Houston, TX 77002
                                                       (713) 890-5000
                                                       michelle.pector@morganlewis.com

                                                       *Attorneys for Defendants National Gas & Electric, LLC and Spark Energy, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of March, 2018, the undersigned caused to be filed the foregoing via the Court's CM/ECF system, which sent notice to all counsel of record in this action.

    */s/ Kenneth I. Schacter*
*Counsel for Defendants National Gas &*
*Electric, LLC and Spark Energy, Inc.*