**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SAUL HOROWITZ, as Sellers'
Representative,

                        Plaintiff,

          v.

NATIONAL GAS & ELECTRIC, LLC and
SPARK ENERGY, INC.,

                      Defendants.

Civ. No. 17-CV-7742 (JPO)

---

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST NATIONAL GAS & ELECTRIC, LLC AND SPARK ENERGY, INC.

Israel Dahan
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com
rgabay@kslaw.com

Chelsea J. Corey
KING & SPALDING LLP
300 South Tryon Street
Suite 1700
Charlotte, NC 28202
Telephone No.:  (704) 503-2575
ccorey@kslaw.com

*Counsel for Plaintiff*

**TABLE OF CONTENTS**

**Page**

**PRELIMINARY STATEMENT** ...............................................................................................1

**STATEMENT OF FACTS**.....................................................................................................4

      A. NGE Enters Into The MIPA And Acquires The Entire Membership Interest In
          Major Energy From The Sellers ......................................................................................4

      B. NGE Immediately Sells Its Membership Interest In Major Energy And
          Assigns The MIPA To Spark Without The Sellers' Required Consent.........................5

      C. Spark's Knowing And Active Participation In NGE's Breach Of The Non-
          Assignment Provision In The MIPA..........................................................................10

**STANDARD OF REVIEW** ..................................................................................................11

**ARGUMENT**.......................................................................................................................13

  I. Plaintiff Is Entitled To Summary Judgment On His Claim Against NGE For
      Breach Of The Unambiguous Non-Assignment Provision In The MIPA ........................13

  II. Plaintiff Is Also Entitled To Summary Judgment On His Request To Void NGE's
      Improper Sale And Assignment Transaction With Spark..................................................14

  III. Plaintiff Is Entitled To Summary Judgment On His Claim Against Spark For
      Tortious Interference By Actively Fostering NGE's Breach Of The Non-
      Assignment Provision In The MIPA..................................................................................15

**CONCLUSION** ...................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Allhusen v. Caristo Const. Corp.*,
   303 N.Y. 446 (N.Y. 1952) ...........................................................................................14, 15

*Canon Inc. v. Tesseron Ltd.*,
   No. 14-cv-5462, 2015 WL 4508334 (S.D.N.Y. July 24, 2015)............................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................................11

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992)...............................................................................................13

*Crump v. QD3 Entm't, Inc.*,
   No. 10 civ. 3564, 2011 WL 446296 (S.D.N.Y. Feb. 3, 2011) .................................................12

*Fabrikant v. French*,
   691 F.3d 193 (2d Cir. 2012)...............................................................................................11

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
   309 F.3d 76 (2d Cir. 2002).................................................................................................13

*LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*,
   287 F.R.D. 230 (S.D.N.Y. 2012) .......................................................................................14

*Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co., Inc.*,
   No. 05 Civ. 217, 2008 WL 190310 (S.D.N.Y. Jan. 16, 2008)...............................................12

*Metropolitan Life Ins. v. RJR Nabisco, Inc.*,
   906 F.2d 884 (2d Cir. 1990)...............................................................................................13

*Omni Quartz, Ltd. v. CVS Corp.*,
   287 F.3d 61 (2d Cir. 2002).................................................................................................13

*Purchase Partners, LLC v. Carver Fed. Sav. Bank*,
   914 F. Supp. 2d 480 (S.D.N.Y. 2012)................................................................................14

*Superior Plus US Holdings, Inc. v. Sunoco, Inc.*,
   No. 13 Civ. 7740, 2014 WL 2462549 (S.D.N.Y. June 2, 2014)............................................12

*Weizmann Inst. of Sci. v. Neschis*,
   229 F. Supp. 2d 234 (S.D.N.Y. 2002).................................................................................15

**Other Authorities**

Fed. R. Civ. P. 56(a) ...............................................................................................................11

Plaintiff Saul Horowitz, as Sellers' Representative, by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion for partial summary judgment ("Motion") against Defendants National Gas & Electric, LLC ("NGE") and Spark Energy, Inc. ("Spark") with respect to his claim against NGE for breach of an unambiguous non-assignment provision, as alleged in Count II of the Amended Complaint, and his claim against Spark for tortious interference related to NGE's breach of the unambiguous non-assignment provision, as alleged in Count IV of the Amended Complaint.[1]  For the reasons discussed below, the Court should grant the Motion.

## PRELIMINARY STATEMENT

Plaintiff and the other former owners[2] of the membership interest in Major Energy[3] brought this action to recover damages they have sustained (and continue to sustain) as a result of Defendants' repeated breaches of their contractual obligations under the agreements entered into in connection with NGE's purchase of the Sellers' membership interest in Major Energy in April 2016.[4]  One of the breach claims asserted by Plaintiff is that NGE breached the unambiguous non-assignment provision contained in the MIPA (*i.e.*, Section 11.7) by selling its acquired 100% membership interest in Major Energy and assigning its rights and obligations

---

[1]  Plaintiff reserves the right to move for summary judgment at a later date with respect to other aspects of Counts II, III and IV of the Amended Complaint, particularly the failure by NGE and Spark (after its improper acquisition of Major Energy from NGE) to comply with their express contractual obligation to operate Major Energy in a "business-as-usual" manner during the three year earnout period.

[2]  The other former owners of Major Energy are Moshe (Mark) Wiederman, Mark Josefovic, Michael Bauman, Asher Fried and certain personal trusts owned by them (collectively, with Plaintiff, the "Sellers").

[3]  "Major Energy" refers to Major Energy Services, LLC, Major Energy Electric Services, LLC, and Respond Power, LLC.

[4]  These agreements include a Membership Interest Purchase Agreement dated as of March 18, 2016 ("MIPA"), an Earnout Agreement dated as of March 18, 2016 and effective as of April 1, 2016 ("Earnout Agreement"), and an Executive Earnout Agreement effective as of April 1, 2016 ("Executive Earnout Agreement").

under the MIPA to Spark (or one of its subsidiaries) *without* obtaining the required prior written consent of the Sellers.  Notably, Defendants did not move to dismiss this breach claim (or any other breach claim asserted in the Amended Complaint).  Plaintiff, on behalf of the Sellers, also filed this action to recover damages sustained as a result of Spark's tortious conduct and active participation in NGE's breaches of the MIPA and related transaction documents, including NGE's breach of the MIPA's unambiguous non-assignment provision.  Spark moved to dismiss the tortious interference claim, which the Court denied (ECF No. 42).

The parties are presently engaged in fact discovery but have completed their respective document productions.  Based on the documents produced to date and the unambiguous language of Section 11.7 of the MIPA (the non-assignment provision), the Court has sufficient legal grounds at this time to grant summary judgment with respect to Plaintiff's claims against NGE for breach of Section 11.7 of the MIPA and against Spark for its tortious conduct in connection with said breach by NGE.  New York courts routinely grant summary judgment prior to the completion of fact discovery where, as here, the issues concern the interpretation of unambiguous contractual provisions and there are no genuine issues of material fact.  Indeed, summary judgment is a useful means of promptly and economically resolving claims prior to trial.

As described below in greater detail, Section 11.7 of the MIPA is unambiguous and expressly prohibits NGE from directly or indirectly assigning the MIPA and the rights and obligations thereunder to anyone without the prior written consent of the Sellers.  Even Defendants' own internal documents confirm this fact.  Nonetheless, NGE pursued and completed a sale of its 100% membership interest in Major Energy and assigned its rights and obligations under the MIPA to Spark (or a Spark subsidiary) *without* obtaining the required prior

written consent of the Sellers.    Again, these facts are uncontroverted and confirmed by Defendants' own internal documents and the agreements executed between NGE and Spark in connection with their improper sale and assignment transaction.    In fact, in their Answer, Defendants admit that "Plaintiff objected to NGE's contemplated drop down of Major Energy into Spark," but nonetheless "in or around August 2016 NGE completed a drop down of Major Energy into Spark."  Answer ¶ 67-70.  Thus, summary judgment is warranted at this time with respect to Plaintiff's claim against NGE for breach of Section 11.7 of the MIPA.  And along with such summary judgment finding, the Court can also grant Plaintiff's request to void NGE's sale and assignment to Spark given the clear and definitive language in Section 11.7 that any assignment made in breach of this provision "shall be void."[5]

Likewise, summary judgment is warranted at this stage with respect to Plaintiff's claim that Spark tortiously interfered with NGE's contractual obligations under Section 11.7 of the MIPA.  As described below, Defendants' own internal documents confirm that throughout the negotiation of the contemplated sale and assignment with NGE, Spark was fully aware of the terms of the MIPA, including the prohibition of an assignment of the MIPA without the Sellers' prior written consent.  Spark was also aware at the time it closed the sale and assignment with NGE that the Sellers were unwilling to consent to such sale and assignment.  Nonetheless, Spark proceeded with the sale and assignment with NGE and took control of Major Energy.  Such wrongful conduct by Spark provides ample grounds for the Court to grant Plaintiff's request for summary judgment on his tortious interference claim against Spark.

---

[5]   Although not part of this Motion, at the appropriate time, Plaintiff will be seeking an award of damages against NGE for its breach of Section 11.7 of the MIPA.  Indeed, the Sellers have sustained significant damages as a result of NGE's improper sale and assignment to Spark, which enabled Spark to take control of Major Energy's business operations during the three-year Earnout period to the detriment of the Sellers.

## STATEMENT OF FACTS

A.    **NGE Enters Into The MIPA And Acquires The Entire Membership Interest In Major Energy From The Sellers**

Major Energy, a private company founded in 2005, is engaged in the business of supplying electricity, natural gas, and other related products and services to residential and commercial consumers located in New York and other U.S. states.  ¶ 1; Answer ¶ 15.[6]   Under the direction of experienced senior management, Major Energy grew its customer count from 12,000 in 2008 to more than 214,000 in 2015; its annual net income from $380,000 in 2008 to over $12.5 million in 2015; and its EBITDA from $390,000 in 2008 to nearly $24 million in 2015.  ¶ 2; Answer ¶ 18.

In or about November 2015, NGE, a private entity, approached the owners of Major Energy, *i.e.*, the Sellers, regarding the possible acquisition of the Sellers' combined 100% membership interest in Major Energy. The Sellers informed NGE that they were willing to consider a sale of Major Energy for the right price—4 x EBITDA.  ¶ 3; Answer ¶ 19.  ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████   On or about March 14, 2016, the Sellers accepted NGE's offer and proceeded to finalize the acquisition documents.  ¶ 5; ████████  Answer ¶ 24.  On or about

---

6   Unless otherwise noted, all citations are to Plaintiff's Rule 56.1 Statement of Undisputed Facts, cited as "¶ __."   Documents referred to in the Statement of Undisputed Facts are attached to the accompanying Declaration of Israel Dahan and referred to as "Dahan Ex. __."

April 15, 2016, NGE and the Sellers closed the transaction and NGE became the owner of 100%

of the membership interest in Major Energy.  ¶ 6; Answer ¶ 30.

In connection with the closing of the transaction, NGE, Major Energy, the Sellers, and

Saul Horowitz, as Sellers' Representative, entered into various agreements, including the MIPA,

the Earnout Agreement, and the Executive Earnout Agreement.  ¶ 7; Dahan Exs. 2 (MIPA), 3

(Earnout Agreement), 4 (Executive Earnout Agreement); Answer ¶ 31.  Pursuant to Section 11.7

of the MIPA, the parties expressly agreed that:

> 11.7  <u>Binding Effect; Assignment</u>.  This Agreement shall be binding upon and
> inure to the benefit of the Parties and their respective successors and permitted
> assigns.  Nothing in this Agreement shall create or be deemed to create any third
> party beneficiary rights in any Person or entity not a party to this Agreement.  ***No
> assignment of this Agreement or of any rights or obligations hereunder may be
> made by any Company, any Seller or Buyer, directly or indirectly (by operation
> of Law or otherwise), <u>without the prior written consent of the other Parties</u> and
> any attempted assignment without the required consents <u>shall be void</u>***."

¶ 8; Dahan Ex. 2 (emphasis added).  NGE is the only entity listed as the "Buyer" in the MIPA.

¶ 9; Dahan Ex. 2; Answer ¶ 31.

### B.    NGE Immediately Sells Its Membership Interest In Major Energy And Assigns The MIPA To Spark Without The Sellers' Required Consent

Prior to the closing of the transaction between the Sellers and NGE, Spark and NGE

began discussions about Spark's acquisition of Major Energy's membership interest from

NGE—a membership interest NGE had not yet even acquired.  Specifically, ███████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████  Notably, ██████████

███████████████████████████████████████████████████

█████████

Shortly thereafter, as confirmed by Defendants' own internal documents, Spark began diligence discussions with NGE for the contemplated sale and assignment. ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████

On May 3, 2016, only two weeks after NGE acquired all the membership interest in Major Energy, NGE and Spark entered into their own Membership Interest Purchase Agreement governing their contemplated transaction (the "Spark MIPA").  The other parties to the Spark MIPA were Retailco, LLC, who is the sole member of NGE, and Spark HoldCo, LLC ("Spark HoldCo"), identified as the "Buyer" in the Spark MIPA.  Spark is the parent of Spark HoldCo. ¶ 15; Dahan Ex. 10.   As the following provisions of the Spark MIPA demonstrate, the contemplated transaction involved not only the sale of Major Energy's membership interest from

NGE to Spark HoldCo, but also an assignment of NGE's rights and obligations under the MIPA (and related transaction documents with the Sellers) to Spark HoldCo. ¶ 16; Dahan Ex. 10.

> Specifically, Section 2.1 of the Spark MIPA states as follows:
>
> Upon the terms contained herein, on the Closing Date, Seller [NGE] agrees to sell to Buyer [Spark HoldCo], and Buyer [Spark HoldCo] agrees to purchase from Seller [NGE], all of Seller's [NGE's] issued and outstanding membership interests in each of the Companies [Major Energy], which are set forth on Schedule 2.1 hereto (collectively, the "Interests") and which Seller [NGE] represents to collectively constitute all of the issued and outstanding Equity Interests in each of the Companies [Major Energy] as of the date of execution of this Agreement, the Effective Date, and Closing.

¶ 17; Dahan Ex. 10.  Moreover, pursuant to Section 2.2(a) of the Spark MIPA, Spark HoldCo agreed to assume NGE's obligations with respect to the Cash Installment to be paid to the Sellers under the MIPA.  ¶ 18; Dahan Ex. 10.  And pursuant to Section 2.2(c) of the Spark MIPA, Spark Holdco agreed "to assume the obligation of Seller [NGE] to pay the Prior Members [Sellers] (subject to the Target Year Earnout Ceiling and the 'Aggregate Earnout Ceiling'), the applicable Earnout Percentage of the Adjusted EBITDA (the 'Earnout') earned by the Companies [Major Energy], on a consolidated basis, for each Target Year subject to the credits in Section 2.2(a)." ¶ 19; Dahan Ex. 10.

> Additionally, Section 2.4 of the Spark MIPA states that:
>
> At Closing under the terms set forth in the Escrow Assignment and Assumption Agreement, Seller [NGE] shall assign to Buyer [Spark HoldCo] all of its rights and obligations with respect to the Escrow Amount, which shall be held in escrow by the Escrow Agent on behalf of Buyer [Spark HoldCo] and the Prior Members [Sellers] in accordance with the Escrow Agreement.  The Escrow Amount shall be held and released by the Escrow Agent to the Prior Members [Sellers] or Buyer [Spark HoldCo] in accordance with the directions provided to the Escrow Agent or as otherwise provided in the Escrow Agreement in accordance with the terms and conditions of the Escrow Disbursement Agreement.

¶ 20; Dahan Ex. 10.  Finally, Section 8.2(y)(iii) of the Spark MIPA expressly states that "***Buyer [Spark HoldCo] shall have assumed all rights and obligations of Seller [NGE] pursuant to the***

*Assignment*."   ¶ 22; Dahan Ex. 10 (emphasis added).   "Assignment" is defined as the "Omnibus Assignment and Assumption Agreement" to be separately executed between NGE and Spark HoldCo, as described below.   ¶ 21; Dahan Exs. 10, 12.

Significantly, under the express terms of the Spark MIPA and consistent with Section 11.7 of the MIPA, both NGE and Spark HoldCo were required to obtain the prior written consent of Plaintiff in order to complete their contemplated sale and assignment—consent they never obtained.   ¶ 22; Dahan Ex. 10.   Specifically, under Section 3.2(e) of the Spark MIPA, Spark HoldCo was required to provide to NGE at closing "the written consent of the Prior Sellers' Representative to the Assignment."   ¶ 22; Dahan Ex. 10.   Moreover, Section 11.1 of the Spark MIPA states:

> 11.1   Prior Sellers' Representative.   For purposes of this Agreement, Seller has advised Buyer that: (i) notices of certain matters arising under the Prior Purchase Agreement must be provided to Saul Horowitz, as Prior Sellers' Representative; (ii) *the prior written consent of said Prior Sellers' Representative is required for the assignment of certain Transaction Agreements, including without limitation the Escrow Agreement and the Escrow Disbursement Agreement*; and (iii) Seller will assume responsibility for providing any such notices to, *and securing any such consents of, Prior Sellers' Representative as necessary under such Prior Purchase Agreement and of the Escrow Agent under the Escrow Agreement to facilitate and effectuate the Transaction contemplated hereunder*.

¶ 23; Dahan Ex. 10 (emphases added).

When the Sellers learned of NGE's plan to sell Major Energy and assign the MIPA and other related transaction documents to Spark (or one of its subsidiaries), Plaintiff, as Sellers' Representative, objected and refused to consent to the contemplated sale and assignment.   ¶ 24; Answer ¶¶ 67-70.   Despite Plaintiff's objection, NGE and Spark jointly proceeded to negotiate and complete the sale and assignment without Plaintiff's consent, in clear breach of Section 11.7 of the MIPA (and even contrary to the express terms of the Spark MIPA).   Answer ¶¶ 67-70.   To

this end, on August 23, 2016, Spark (not Spark HoldCo) announced that "the Company has completed its acquisition" of Major Energy from NGE.  ¶ 25; Dahan Ex. 11.

That same day, and in connection with their improper sale and assignment transaction, NGE and Spark HoldCo entered into an ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████  Moreover, ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████  Also that same day, ████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████

████████████████████████████████████████████



**C.    Spark's Knowing And Active Participation In NGE's Breach Of The Non-Assignment Provision In The MIPA**

As described above and evident from Defendants' internal documents and agreements between each other, throughout the negotiation of the contemplated sale and assignment with NGE, Spark was fully aware of the terms of the MIPA, including the prohibition of an assignment of the MIPA and NGE's rights and obligations thereunder without the Sellers' prior written consent.  ¶ 32; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

████████████████████████████████████████████████████████████████

████████████████   Nonetheless, Spark proceeded with the sale and assignment transaction with

NGE and thereby knowingly caused NGE to breach the unambiguous terms of Section 11.7 of

the MIPA.  ¶ 34; ██████████████████ Answer ¶ 70.

Immediately after the improper sale and assignment transaction with NGE, ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████

## **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "There is no genuine issue of material fact where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party."  *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (internal quotation marks and

citation omitted).  "Once the moving party has asserted facts sufficient to show that the non-

movant's claims or affirmative defenses cannot be sustained, the opposing party must set out

specific facts showing a genuine issue for trial, and cannot rely merely on allegations or denials

contained in the pleadings." *Canon Inc. v. Tesseron Ltd.*, No. 14-cv-5462, 2015 WL 4508334, at *4 (S.D.N.Y. July 24, 2015) (internal quotation marks and citations omitted). "Only disputes over material facts—facts that might affect the outcome of the suit under the governing law— will properly preclude the entry of summary judgment." *Id.* (internal quotation marks and citation omitted).

In addition, courts in this Circuit have found summary judgment appropriate, even prior to completion of any or all discovery, where the case involves interpretation of an unambiguous contract and there are no material facts in dispute. *See Superior Plus US Holdings, Inc. v. Sunoco, Inc.*, No. 13 Civ. 7740, 2014 WL 2462549, at *5 (S.D.N.Y. June 2, 2014) (entertaining and partially granting a summary judgment motion as to liability before discovery was completed in a breach of contract case because "[t]he contractual dispute [was] purely a question of law, and [defendant] fail[ed] to identify any information that might put a material fact in dispute"); *Crump v. QD3 Entm't, Inc.*, No. 10 civ. 3564, 2011 WL 446296, at *3 (S.D.N.Y. Feb. 3, 2011) ("[A] grant of summary judgment may be appropriate prior to discovery where the moving party can demonstrate that there is no disputed issue of material fact."); *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co., Inc.*, No. 05 Civ. 217, 2008 WL 190310, at *6, *13-16, *21 (S.D.N.Y. Jan. 16, 2008) (granting summary judgment on a contract claim).

As demonstrated below, summary judgment with respect to certain claims in Counts II and IV of the Amended Complaint is appropriate at this stage, prior to the completion of discovery, because the unambiguous terms of the MIPA and undisputed documents produced by the parties sufficiently demonstrate, as a matter of law, NGE's breach of the non-assignment provision of the MIPA and Spark's knowing and active participation in this breach.

## ARGUMENT

**I.    Plaintiff Is Entitled To Summary Judgment On His Claim Against NGE For Breach Of The Unambiguous Non-Assignment Provision In The MIPA**

Summary judgment is warranted with respect to Plaintiff's claim that NGE breached Section 11.7 of the MIPA by selling its membership interest in Major Energy and assigning its rights and obligations under the MIPA to Spark without the Sellers' prior written consent.

"The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment." *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002). "Contract language is unambiguous if it has 'a definite and precise meaning, unattended by [the] danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Metropolitan Life Ins. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (N.Y. 1978)). Where a court determines that a "contract is not ambiguous[,] it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence and it may then award summary judgment." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed.").

Here, Section 11.7 of the MIPA unambiguously provides that there is to be no assignment of the MIPA, "or any of the rights or obligations hereunder," by any party to the MIPA, including NGE, "without the prior written consent of the other Parties and any attempted assignment without the required consents shall be void." ¶¶ 7-8; Dahan Ex. 2. Thus, by selling

its membership interest in Major Energy and assigning its rights and obligations under the MIPA
(and other related agreements with the Sellers) to Spark (or Spark HoldCo), *without the consent
of the Sellers*, NGE breached this express and unequivocal language of Section 11.7.  In fact, as
described above, the terms of the various agreements NGE entered into with Spark in connection
with their improper sale and assignment, including the Spark MIPA, ███████████

████████████████████████████████  conclusively establish NGE's

breach of Section 11.7.  ¶¶ 17-24, 27-31; Dahan Exs. 10, ██████  Likewise, Defendants' Answer
to the Amended Complaint confirms NGE's breach of Section 11.7 as Defendants admit that
"Plaintiff objected to NGE's contemplated drop-down of Major Energy into Spark," but,
nonetheless, "in or around August 2016 NGE completed a drop down of Major Energy into
Spark." ¶¶ 24-25; Ans. ¶¶ 67-70.

Accordingly, the Court now has ample grounds to grant Plaintiff's request for judgment
as a matter of law against NGE for breach of Section 11.7 of the MIPA.

**II.     Plaintiff Is Also Entitled To Summary Judgment On His Request To Void NGE's
Improper Sale And Assignment Transaction With Spark**

New York law provides that assignments "made in contravention of a prohibition clause
in a contract are void if the contract contains clear, definite and appropriate language declaring
the invalidity of such assignments." *LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico
S.A. de C.V.*, 287 F.R.D. 230, 235 (S.D.N.Y. 2012) (quoting *Macklowe v. 42nd St. Dev. Corp.*,
566 N.Y.S.2d 606, 606 (1st Dep't 1991)); *see also Purchase Partners, LLC v. Carver Fed. Sav.
Bank*, 914 F. Supp. 2d 480, 505 (S.D.N.Y. 2012) (contractual provisions prohibiting assignments
are not enforceable except where "the relevant provision of the contract contains 'clear, definite,
and appropriate' language declaring an assignment invalid") (citation omitted); *Allhusen v.
Caristo Const. Corp.*, 303 N.Y. 446, 452 (N.Y. 1952) (voiding an assignment where the non-

assignment clause stated that "assignment by the second party . . . without the written consent of the first party shall be void").

Here, the uncontroverted language of the assignment clause in Section 11.7 of the MIPA provides that any attempted assignment by NGE without the required consent from Plaintiff "***shall be void***."   ¶ 8; Dahan Ex. 2 (emphasis added).  Accordingly, as in *Allhusen*, the Court can and should void NGE's sale and assignment transaction with Spark (or Spark HoldCo)—a transaction that violated the express consent requirement in Section 11.7.

**III.**  **Plaintiff Is Entitled To Summary Judgment On His Claim Against Spark For Tortious Interference By Actively Fostering NGE's Breach Of The Non-Assignment Provision In The MIPA**

Under New York law, the elements of tortious interference with contract are "(a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff."  *Weizmann Inst. of Sci. v. Neschis*, 229 F. Supp. 2d 234, 253 (S.D.N.Y. 2002) (quoting *Albert v. Loksen*, 239 F.3d 256, 274 (2d Cir. 2001)).  There is no genuine issue of material fact as to any of these elements with respect to Spark's knowing and active participation in NGE's breach of the non-assignment provision in the MIPA.

As to the first element, the parties do not dispute that the MIPA is a valid contract.  As to the second element, Defendants' own documents, including the Spark MIPA and ████████████, establish that Spark, a non-party to the MIPA, had knowledge of the MIPA and the non-assignment provision therein.

As to the third element, as described above, Spark knowingly and actively participated in NGE's breach of the non-assignment provision by working with NGE to complete the sale of Major Energy and assignment of the MIPA without the required consent of the Sellers.  In fact, Spark's bad faith conduct is evidenced by its willingness to enter into the ████████████



In other words, ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  Such an attempted scheme is the height of bad faith conduct by Spark.  Accordingly, this Court can and should grant summary judgment at this time and find that Spark tortiously interfered with NGE's contractual obligations under Section 11.7 of the MIPA.

## CONCLUSION

For all the reasons stated above, Plaintiff's motion for partial summary judgment should be granted in its entirety.

Dated: January 14, 2019
New York, New York

KING & SPALDING LLP

*/s/ Israel Dahan*
Israel Dahan
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com
rgabay@kslaw.com

Chelsea J. Corey
KING & SPALDING LLP
300 South Tryon Street
Suite 1700
Charlotte, NC 28202
Telephone No.:  (704) 503-2575
ccorey@kslaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 14, 2019, I electronically filed the foregoing Notice of Appearance with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.


/s/ *Israel Dahan*
Israel Dahan