UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUL HOROWITZ, as Sellers' Representative,<br><br>              Plaintiff,<br>     v.<br><br>NATIONAL GAS & ELECTRIC, LLC and SPARK ENERGY, INC.,<br><br>              Defendants. | Civ. No. 17-CV-7742 (JPO) |

**PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Saul Horowitz, as Sellers' Representative, hereby submits this statement of material facts as to which there is no genuine issue to be tried. Documents referenced in this statement are attached to the accompanying Declaration of Israel Dahan in Support of Plaintiff's Motion for Partial Summary Judgment and referred to as "Dahan Ex. __."

**I.    NGE Enters Into The MIPA And Acquires The Entire Membership Interest In Major Energy From The Sellers**

1.    Major Energy, a private company founded in 2005, is engaged in the business of supplying electricity and natural gas and other related products and services to residential and commercial consumers located in New York and other U.S. states. Answer and Additional Defenses of Defendants to the Amended Complaint ("Ans.") ¶ 15 (ECF No. 45).

2.    Under the direction of experienced senior management, Major Energy grew its customer count from 12,000 in 2008 to more than 214,000 in 2015; its annual net income from

$380,000 in 2008 to over $12.5 million in 2015; and its EBITDA from $390,000 in 2008 to nearly $24 million in 2015.  Ans. ¶ 18.

3.  In or about November 2015, NGE, a private entity, approached the owners of Major Energy, *i.e.*, the Sellers, regarding the possible acquisition of the Sellers' combined 100% membership interest in Major Energy. The Sellers informed NGE that they were willing to consider a sale of Major Energy for the right price—4 x EBITDA.  Ans. ¶ 19.

4.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5.  On or about March 14, 2016, the Sellers accepted NGE's offer and proceeded to finalize the acquisition documents.  Ans. ¶ 24; ████

6.  On or about April 15, 2016, NGE and the Sellers closed the transaction and NGE became the owner of 100% of the membership interest in Major Energy.  Ans. ¶ 30.

7.  In connection with the closing of the transaction, NGE, Major Energy, the Sellers, and Saul Horowitz, as Sellers' Representative, entered into certain agreements, including the Membership Interest Purchase Agreement dated as of March 18, 2016 ("MIPA"), an Earnout Agreement dated as of March 18, 2016 and effective as of April 1, 2016 ("Earnout Agreement"), and an Executive Earnout Agreement effective as of April 1, 2016 ("Executive Earnout

Agreement"). Ans. ¶ 31; Dahan Exs. 2 (MIPA), 3 (Earnout Agreement), 4 (Executive Earnout Agreement).

8. Section 11.7 of the MIPA states as follows:

> 11.7   Binding Effect; Assignment.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement.  No assignment of this Agreement or of any rights or obligations hereunder may be made by any Company, any Seller or Buyer, directly or indirectly (by operation of Law or otherwise), without the prior written consent of the other Parties and any attempted assignment without the required consents shall be void."

Dahan Ex. 2.

9. NGE is the only entity listed as the "Buyer" in the MIPA.  Ans. ¶ 31; Dahan Ex. 2.

## II. NGE Sells Its Membership Interest In Major Energy And Assigns The MIPA To Spark Without The Sellers' Required Consent

10. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

11. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

12. Thereafter, Spark began diligence discussions with NGE for the contemplated sale of Major Energy and assignment of the MIPA to Spark (or a Spark subsidiary).  To this end, ███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

13. ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████

14. ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██

15. On May 3, 2016, NGE and Spark entered into a Membership Interest Purchase Agreement governing the sale of Major Energy and assignment of NGE's rights and obligations under the MIPA to Spark (the "Spark MIPA"). The other parties to the Spark MIPA were Retailco, LLC, who is the sole member of NGE, and Spark HoldCo, LLC ("Spark HoldCo"), identified as the "Buyer" in the Spark MIPA. Spark is the parent of Spark HoldCo. Dahan Ex. 10.

16. Pursuant to the terms of the Spark MIPA, NGE agreed to sell its 100% membership interest in Major Energy to Spark HoldCo and assign all of its rights and obligations under the MIPA (and related transaction documents with the Sellers) to Spark HoldCo. Dahan Ex. 10.

17. Section 2.1 of the Spark MIPA states as follows:

Upon the terms contained herein, on the Closing Date, Seller [NGE] agrees to sell to Buyer [Spark HoldCo], and Buyer [Spark HoldCo] agrees to purchase from Seller [NGE], all of Seller's [NGE's] issued and outstanding membership interests in each of the Companies [Major Energy], which are set forth on Schedule 2.1 hereto (collectively, the "Interests") and which Seller [NGE] represents to collectively constitute all of the issued and outstanding Equity Interests in each of the Companies [Major Energy] as of the date of execution of this Agreement, the Effective Date, and Closing.

Dahan Ex. 10.

18. Moreover, pursuant to Section 2.2(a) of the Spark MIPA, Spark HoldCo agreed to assume NGE's obligations with respect to the Cash Installment to be paid to the Sellers under the MIPA. Dahan Ex. 10.

19. Pursuant to Section 2.2(c) of the Spark MIPA, Spark HoldCo also agreed "to assume the obligation of Seller [NGE] to pay the Prior Members [Sellers] (subject to the Target Year Earnout Ceiling and the 'Aggregate Earnout Ceiling'), the applicable Earnout Percentage of the Adjusted EBITDA (the 'Earnout') earned by the Companies [Major Energy], on a consolidated basis, for each Target Year subject to the credits in Section 2.2(a)." Dahan Ex. 10.

20. Additionally, Section 2.4 of the Spark MIPA states as follows:

At Closing under the terms set forth in the Escrow Assignment and Assumption Agreement, Seller [NGE] shall assign to Buyer [Spark HoldCo] all of its rights and obligations with respect to the Escrow Amount, which shall be held in escrow by the Escrow Agent on behalf of Buyer [Spark HoldCo] and the Prior Members [Sellers] in accordance with the Escrow Agreement. The Escrow Amount shall be held and released by the Escrow Agent to the Prior Members [Sellers] or Buyer [Spark HoldCo] in accordance with the directions provided to the Escrow Agent or as otherwise provided in the Escrow Agreement in accordance with the terms and conditions of the Escrow Disbursement Agreement.

Dahan Ex. 10.

21. Section 8.2(y)(iii) of the Spark MIPA states that "Buyer [Spark HoldCo] shall have assumed all rights and obligations of Seller [NGE] pursuant to the Assignment." Dahan

Ex. 10.  "Assignment" is defined as the "Omnibus Assignment and Assumption Agreement" to be separately executed between NGE and Spark HoldCo.  *Id*.

22.     Under the terms of the Spark MIPA, both NGE and Spark HoldCo were required to obtain the consent of Plaintiff prior to completion of the sale and assignment transaction contemplated by the Spark MIPA.  Specifically, Section 3.2(e) of the Spark MIPA states that Spark HoldCo was required to provide to NGE at closing "the written consent of the Prior Sellers' Representative to the Assignment."  Dahan Ex. 10.

23.     Moreover, Section 11.1 of the Spark MIPA states as follows:

> 11.1    <u>Prior Sellers' Representative</u>.  For purposes of this Agreement, Seller has advised Buyer that: (i) notices of certain matters arising under the Prior Purchase Agreement must be provided to Saul Horowitz, as Prior Sellers' Representative; (ii) the prior written consent of said Prior Sellers' Representative is required for the assignment of certain Transaction Agreements, including without limitation the Escrow Agreement and the Escrow Disbursement Agreement; and (iii) Seller will assume responsibility for providing any such notices to, and securing any such consents of, Prior Sellers' Representative as necessary under such Prior Purchase Agreement and of the Escrow Agent under the Escrow Agreement to facilitate and effectuate the Transaction contemplated hereunder.

Dahan Ex. 10.

24.     When the Sellers learned of NGE's intention to sell Major Energy and assign the MIPA and other related transaction documents to Spark (or a Spark subsidiary), Plaintiff, as Sellers' Representative, objected and refused to consent to the contemplated sale and assignment. Ans. ¶¶ 67-70.

25.     Nonetheless, on August 23, 2016, Spark announced that it had completed its acquisition of Major Energy from NGE.  Dahan Ex. 11.

26.     ████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████
███████████████

27. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

28. ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████

29. ███████████████████████████████████

███████████████████████████████████████████

30. ██████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████



31.

### III. Spark's Knowing And Active Participation In NGE's Breach Of The Non-Assignment Provision In The MIPA

32. Throughout the negotiation of the contemplated sale and assignment with NGE, Spark was fully aware of the terms of the MIPA, including the prohibition of an assignment of the MIPA and NGE's rights and obligations thereunder without the Sellers' prior written consent.

33.

34. Nonetheless, Spark proceeded with the sale and assignment transaction with NGE. Ans. ¶ 70;

35. ██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████

36. ██████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████

37. ██████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
███

Dated: New York, New York
January 14, 2019

KING & SPALDING LLP

By: */s/ Israel Dahan*
Israel Dahan
1185 Avenue of the Americas
New York, NY 10036
Telephone No.: (212) 556-2114
Email: idahan@kslaw.com

*Counsel for Plaintiff*