**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| SAUL HOROWITZ, as Sellers' Representative, |
|                              Plaintiff, |
|          v. |
| NATIONAL GAS & ELECTRIC, LLC and SPARK ENERGY, INC., |
|                            Defendants. |

Civ. No. 17-CV-7742 (JPO)

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST**
**<u>NATIONAL GAS & ELECTRIC, LLC AND SPARK ENERGY, INC.</u>**

Israel Dahan
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com
rgabay@kslaw.com

Chelsea J. Corey
KING & SPALDING LLP
300 South Tryon Street
Suite 1700
Charlotte, NC 28202
Telephone No.:  (704) 503-2575
ccorey@kslaw.com

*Counsel for Plaintiff*

## TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................................1

**ARGUMENT**......................................................................................................................3

  I.  Plaintiff Is Entitled To Summary Judgment On His Claim Against NGE For Breach Of The Unambiguous Non-Assignment Provision In The MIPA .........................3

    A.  Plaintiff Has Established All The Essential Elements Of His Breach Of Contract Claim..........................................................................................................3

    B.  Section 11.7 Of The MIPA Is Not Ambiguous And Expressly Prohibited NGE's Assignment To Spark HoldCo Without The Prior Written Consent Of The Sellers .........................................................................................................5

    C.  Defendants' Waiver, Ratification, And Estoppel Defenses Likewise Fail As A Matter Of Law...................................................................................................9

  II.  No Genuine Issue Of Fact Remains Regarding Spark's Tortious Interference With The MIPA And Section 7.14(c) Does Not Exculpate Spark's Misconduct......................13

**CONCLUSION** ..................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                       **Page(s)**

*Aronoff v. Albanese*,
   85 A.D.2d 3 (2d Dep't 1982) ................................................................................10

*Ashwood Capital, Inc. v. OTG Mgt., Inc.*,
   99 A.D.3d 1 (1st Dep't 2012) ...............................................................................7

*Awards.com, LLC v. Kinko's, Inc.*,
   42 A.D.3d 178 (1st Dep't 2007) ..........................................................................12

*Baidu, Inc. v. Register.com, Inc.*,
   760 F. Supp. 2d 312 (S.D.N.Y. 2010)...................................................................14

*Banco De La Republica De Colom. v. Bank of N.Y. Mellon*,
   No. 10-cv-536, 2013 WL 3871419 (S.D.N.Y. July 26, 2013)...........................10, 12

*Chase Manhattan Bank v. Motorola, Inc.*,
   184 F. Supp. 2d 384 (S.D.N.Y. 2002)...................................................................12

*Clark v. Buffalo Wire Works Co.*,
   3 F. Supp. 2d 366 (W.D.N.Y. 1998) .....................................................................10

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992)................................................................................7

*CS First Boston Ltd. v. Behar*,
   No. 94-cv-7167, 1996 WL 384893 (S.D.N.Y. July 9, 1996).................................12

*Draper v. Georgia Props.*,
   230 A.D.2d 455 (1st Dep't 1997) ........................................................................11

*Equator Int'l, Inc. v. NH Street Investors, Inc.*,
   978 N.Y.S.2d 817 (N.Y. Sup. Ct. 2014) ...............................................................13

*Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.*,
   212 A.D.2d 577 (2d Dep't 1995) .....................................................................14, 15

*Heisman Trophy Trust v. Smack Apparel Co.*,
   637 F. Supp. 2d 146 (S.D.N.Y. 2009)...................................................................13

*John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Fam. Life Ins.
Tr.*,
   No. 16-cv-7071, 2018 WL 6173436 (E.D.N.Y. Nov. 26, 2018) ............................10

*Kalisch-Jarcho, Inc. v. City of New York*,
   58 N.Y.2d 377 (N.Y. 1983) ................................................................................15

*Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*,
 595 F.3d 458 (2d Cir. 2010) ...................................................................................... 7

*LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*,
 287 F.R.D. 230 (S.D.N.Y. 2012) ................................................................................ 4

*MacGregor v. Milost Global, Inc.*,
 No. 17-cv-6691, 2018 WL 4007642 (S.D.N.Y. Aug. 22, 2018) .................................. 4

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*,
 842 F. Supp. 2d 682 ............................................................................................. 12, 13

*Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*,
 273 F. Supp. 2d 436 (S.D.N.Y. 2003) ........................................................................ 7

*Park Irmat Drug Corp. v. Optumrx, Inc.*,
 152 F. Supp. 3d 127 (S.D.N.Y. 2016) ...................................................................... 12

*Pfizer, Inc. v. Stryker Corp.*,
 348 F. Supp. 2d 131 (S.D.N.Y. 2004) ........................................................................ 5

*Pleasant Hill Developers, Inc. v. Foxwood Enters., LLC*,
 65 A.D.3d 1203 (2d Dep't 2009) ............................................................................... 5

*Reid v. IBM Corp.*,
 No. 95-cv-1755, 1997 WL 357969 (S.D.N.Y. June 26, 1997) ................................. 10

*Rothschild v. Title Guarantee & Tr. Co.*,
 204 N.Y. 458 (N.Y. 1912) ....................................................................................... 10

*Sardanis v. Sumitomo Corp.*,
 282 A.D.2d 322 (1st Dep't 2001) ........................................................................ 10, 11

*Sporre S.A. de C.V. v. Int'l Paper Co.*,
 No. 99-cv-2638, 1999 WL 1277243 (S.D.N.Y. Dec. 30, 1999) .......................... 11, 13

*Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*,
 36 Misc. 3d 328, 935 N.Y.S.2d 858 (N.Y. Sup. Ct. 2012) ........................................ 5

*Town of Hempstead v. Inc. Village of Freeport*,
 15 A.D.3d 567 (2d Dep't 2005) ............................................................................... 12

*Trump Int'l Hotel & Tower v. Carrier Corp.*,
 524 F. Supp. 2d 302 (S.D.N.Y. 2007) ...................................................................... 15

*U.S. Bank Nat'l Assoc. v. BFPRU I, LLC*,
 230 F. Supp. 3d 253 (S.D.N.Y. 2017) ...................................................................... 12

*Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*,
No. 08-cv-9878, 2011 WL 3796331 (S.D.N.Y. Aug. 25, 2011)..............................................13

*Wilson v. One Ten Duane St. Realty Co.*,
123 A.D.2d 198 (1st Dep't 1987) ...........................................................................................11

**Other Authorities**

6A N.Y. Jur. 2d Assignments § 42 (2d ed. 2019).........................................................................10

57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 40 (2d ed. 2019) .......................................11

Restatement (Second) of Contracts § 195 (1981) ........................................................................15

27 Williston on Contracts § 70:13 (4th ed. 2018).........................................................................10

Plaintiff Saul Horowitz, as Sellers' Representative, by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his motion for partial summary judgment ("Motion") against Defendants National Gas & Electric, LLC ("NGE") and Spark Energy, Inc. ("Spark," and collectively with NGE, "Defendants") with respect to Counts II and IV of the Amended Complaint.[1]

## **<u>INTRODUCTION</u>**

Defendants' opposition brief further confirms the merits of the Motion and Plaintiff's entitlement to judgment as a matter of law on his claims against NGE for breach of Section 11.7 of the MIPA and against Spark for tortious interference.  Nowhere in their opposition do Defendants dispute the fact that Section 11.7 of the MIPA contains the following language:  "No assignment of this Agreement or of any rights or obligations hereunder may be made by . . . Buyer [NGE], directly or indirectly . . . without the prior written consent of the other Parties and any attempted assignment without the required consents shall be void."  That language constitutes a straightforward bar of non-consensual assignments.  Nor do Defendants dispute the fact that NGE assigned the MIPA and all of the rights and obligations thereunder to Spark HoldCo without obtaining the prior written consent of the Sellers.  Defendants also do not dispute that, at the time of the assignment, Spark knew of the non-assignment provision contained in Section 11.7 and knew that the Sellers had not provided their written consent to the assignment.  Yet, Spark proceeded with the assignment in violation of Section 11.7.

Faced with these damning facts, Defendants attempt to avoid their liability by introducing wholly irrelevant facts, distorting the factual record, and raising new defense theories that are

---

[1] Plaintiff has chosen not to oppose Defendants' motion for leave to file their First Amended Answer and Additional Defenses (ECF Nos. 63-64).  But as demonstrated below, Defendants' proposed new defenses of ratification, waiver, and ambiguity all fail as a matter of applicable New York law and do not preclude this Court from granting Plaintiff's Motion.  *See infra* Sections I.B and I.C.

baseless and unsupportable under applicable New York law.  For example, Defendants now contend that Section 11.7 is ambiguous and "superseded" by the non-assignment provision contained in Section 3.1 of the Earnout Agreement, which purportedly permits an assignment to affiliates of NGE, such as Spark HoldCo, without the prior written consent of the Sellers.  This new argument, however, is belied by the plain text of the non-assignment provisions, which make clear that they only govern assignments of their respective agreements.  Indeed, these non-assignment provisions do not cross-reference one another, and the Earnout Agreement is devoid of any language stating that Section 3.1 "supersedes" Section 11.7 of the MIPA.  This argument also is at odds with the language contained in the various agreements Defendants executed in connection with the assignment transaction and their own statements and admissions in this case.  Defendants essentially want the Court to ignore the plain language of Section 11.7 and add new qualifying language they could have included when they negotiated and executed the MIPA, but did not.  New York precedent and rules of contract construction do not permit a court to engage in such contract redrafting and interpretation.

Defendants next attempt to avoid their liability by relying on defense theories of ratification, waiver, and estoppel.  Putting aside the lack of factual support for these defenses and Defendants' distortion of the relevant factual record, as demonstrated below, New York law soundly rejects ratification, waiver, and estoppel defenses in the context of void assignments or contracts.[2]  Unsurprisingly, Defendants do not cite a single case applying the defense of ratification, waiver, or estoppel to a claim for breach of a non-assignment provision that renders the assignment void.  Additionally, Defendants' ratification, waiver, and estoppel defenses are all barred by the unambiguous and enforceable no-waiver clause in the MIPA.  As described below,

---

[2] Because these defense theories by Defendants fail as a matter of law, Plaintiff will not burden the Court with the introduction of additional factual evidence from the record that demonstrates Defendants' distortion and misleading description of the factual record relevant to these defenses.

New York courts have routinely applied no-waiver clauses to defeat such defenses, even on summary judgment.

Accordingly, the Court can and should grant Plaintiff's Motion in its entirety.

## ARGUMENT

### I.   Plaintiff Is Entitled To Summary Judgment On His Claim Against NGE For Breach Of The Unambiguous Non-Assignment Provision In The MIPA

#### A.   Plaintiff Has Established All The Essential Elements Of His Breach Of Contract Claim

In their opposition brief, Defendants assert that the Court cannot grant summary judgment with respect to Plaintiff's claim for breach of Section 11.7 of the MIPA because Plaintiff has not established two essential elements of his breach of contract claim:  (1) the Sellers' performance under the MIPA and (2) damages.  *See* Defendants' Response In Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opp.") at 14-15.  These arguments fail.

First, the Sellers' performance of their obligations under the MIPA cannot possibly be in dispute.  Pursuant to Section 2.1 of the MIPA, the Sellers agreed to sell to NGE, and NGE agreed to purchase from the Sellers, all of the Sellers' issued and outstanding membership interest in Major Energy.  *See* Ex. 2 at 20 (MIPA § 2.1).  There is no dispute that the Sellers performed this obligation and sold 100% of their membership interest in Major Energy to NGE.  Even Defendants concede that it is "undisputed" that on or about April 15, 2016, NGE became the owner of 100 percent of the membership interest in Major Energy.  *See* Defendants' Response to Plaintiff's Rule 56.1 Statement ("Defs.' Response to Rule 56.1 Stmt.") ¶ 6; *see also* Answer ¶ 30 (admitting that "[o]n or about April 15, 2016, NGE and the Sellers closed the transaction and *NGE became the owner of 100% of the membership interest in Major Energy*.") (emphasis added).  Moreover, Defendants "do not dispute that, on August 23, 2016, Spark HoldCo's

3

*purchase from NGE of the Membership Interests in Major Energy closed*." Defs.' Response to Rule 56.1 Stmt. ¶ 25 (emphasis added); *see also id.* ¶ 57. NGE obviously could not have sold and assigned the membership interest in Major Energy to Spark HoldCo if NGE had not first obtained this membership interest from the Sellers under the MIPA. Accordingly, Plaintiff has established the Sellers' performance under the MIPA.

Second, Plaintiff has established his entitlement to declaratory relief (in addition to damages) as a result of NGE's breach of Section 11.7 of the MIPA—*i.e.*, "an order declaring that any attempted assignment of the MIPA without the Sellers' consent, including the purported assignment from NGE to Spark, is void." Am. Compl. (ECF No. 22) at 35. A request for declaratory relief in connection with a plaintiff's breach of contract is proper. *See MacGregor v. Milost Global, Inc.*, No. 17-cv-6691, 2018 WL 4007642, at *5 (S.D.N.Y. Aug. 22, 2018) (stating that it is proper to plead a request for declaratory relief in connection with a breach of contract claim). And as discussed in great detail in Plaintiff's opening brief, New York law gives the Court the power to grant Plaintiff's request to void NGE's assignment given the clear and definitive language in Section 11.7 that any assignment made in breach of that provision "shall be void." *See, e.g.*, Mot. at 3, 14-15; *see also LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*, 287 F.R.D. 230, 235 (S.D.N.Y. 2012) (assignments "made in contravention of a prohibition clause in a contract are void if the contract contains clear, definite, and appropriate language declaring the invalidity of such assignments"). Notably, Defendants do not even attempt to address, let alone dispute, this established law.

Moreover, Plaintiff is not asking the Court to make a damages determination at this time with respect to NGE's breach of Section 11.7 of the MIPA. *See* Mot. at 3 n.5 (stating that the Sellers will seek an award of damages "at the appropriate time" and "have sustained significant

damages as a result of NGE's improper sale and assignment to Spark . . . ."). It is entirely appropriate for the Court to grant partial summary judgment to Plaintiff now with respect to NGE's liability and defer its determination of the amount of damages sustained by the Sellers to a later point in time. *See Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 148 (S.D.N.Y. 2004) (granting partial summary judgment on liability in connection with breach of contract claim, with damages to be adjudicated later); *Pleasant Hill Developers, Inc. v. Foxwood Enters., LLC*, 65 A.D.3d 1203, 1206 (2d Dep't 2009) (reversing lower court because it "should have granted that branch of Pleasant Hill's motion which was for summary judgment on the issue of liability on the causes of action to recover damages for breach of contract").[3]

Accordingly, contrary to Defendants' contentions, Plaintiff has established all of the elements necessary for the Court to conclude at this juncture that NGE's assignment to Spark HoldCo, without the prior written consent of the Sellers, violated Section 11.7 of the MIPA and is void.

**B.    Section 11.7 Of The MIPA Is Not Ambiguous And Expressly Prohibited NGE's Assignment To Spark HoldCo Without The Prior Written Consent Of The Sellers**

Defendants next argue that Plaintiff is not entitled to summary judgment because there is purported ambiguity concerning whether Section 11.7 restricted NGE's ability to complete the

---

[3] Defendants suggest that rescission of the assignment at this late stage would be extremely costly and impractical. Opp. at 22-23. Yet, as is apparent from the MIPA, the parties acknowledged the possibility of rescission when NGE specifically waived its right to seek rescission of the sale. Ex. 2 at 60 (MIPA § 9.8). There is no similar provision restricting the Sellers' attempt to seek rescission. Moreover, even if it were impractical to rescind NGE's purported assignment to Spark HoldCo, rescissory damages may be awarded for the void assignment. *See Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*, 36 Misc. 3d 328, 343, 935 N.Y.S.2d 858, 869 (N.Y. Sup. Ct. 2012) (stating that "[r]escissory damages are an established remedy where rescission, the voiding of a contract, may not be a valid form of relief" and finding that rescissory damages were appropriate because "rescission [was] warranted, but impractical"). Thus, the Court can conclude that Plaintiff is entitled to have the assignment declared void but that an award of rescissory damages would be a more practical remedy.

assignment transaction with Spark HoldCo, an affiliate of NGE.  To this end, Defendants contend that Section 11.7 of the MIPA is "superseded" by the anti-assignment provision in the Earnout Agreement (Section 3.1) that permits assignments to Affiliates, such as Spark HoldCo, without prior written consent of the Sellers.[4]  Opp. at 15-17.  Defendants' new ambiguity theory smacks of desperation.

Section 11.7 of the MIPA cannot be any clearer—it expressly states that there is to be "[n]o assignment of *this Agreement*," *i.e.*, the MIPA, "or of any rights or obligations [under the MIPA]," by any party to the MIPA, including NGE, "without the prior written consent of the other Parties and any attempted assignment without the required consents shall be void."  Ex. 2 at 67 (MIPA § 11.7) (emphasis added).  Section 11.7 does not contain any exceptions for Affiliates or reference to Section 3.1 of the Earnout Agreement or the Executive Earnout Agreement (collectively, the "Earnout Agreements").  NGE breached the unambiguous language of Section 11.7 of the MIPA by assigning the MIPA and all of the rights and obligations thereunder, including rights and obligations beyond the Earnout Agreements, to Spark HoldCo without the prior written consent of the Sellers.  *See* Ex. 12 (Omnibus Assignment and Assumption Agreement) at 1-2.  Not surprisingly, Defendants cannot point to any language in the Earnout Agreements stating that their provisions supersede the provisions in the MIPA.

Indeed, Defendants' argument flies in the face of their own internal documents, in which they acknowledge that Section 11.7 prohibits the assignment of the MIPA (and other related agreements NGE entered into with the Sellers) without the Sellers' prior written consent.  *See* Ex. 10 (Spark MIPA § 11.1) ("[NGE] has advised [Spark] that . . . the prior written consent of . . . Sellers' Representative *is required* for the assignment of certain Transaction Agreements,

---

[4] Section 3.1 of the Earnout Agreement and Executive Earnout Agreement states that "*[t]his Agreement* shall not be assignable by either Party without the prior written consent of the other Parties, except as to Affiliates or in the event of a Buyer Change of Control."  Ex. 3, § 3.1 (emphasis added).

including without limitation the Escrow Agreement and the Escrow Disbursement Agreement")
(emphases added); ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ (emphases added).

Moreover, Defendants' argument is contrary to well-settled New York rules of contract interpretation that require a court to interpret a contract so as to give effect to all of its provisions and "not accept an interpretation that ignores the interplay of the terms, renders certain terms 'inoperable,' and creates a conflict where one need not exist." *Net2Globe Int'l, Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003) (citations omitted). Additionally, "courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010); *see also Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) ("Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."). Defendants essentially ask the Court to violate these established rules and principles. If the parties wanted Section 11.7 to have an exception for Affiliates, they easily could have added such an exception, like they did in Section 3.1 of the Earnout Agreements. They did not. *See Ashwood Capital, Inc. v. OTG Mgt., Inc.*, 99 A.D.3d 1, 7 (1st Dep't 2012) ("[C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include," especially an agreement negotiated at arms-length by sophisticated parties) (citation

and internal quotation marks omitted).  Defendants must live with the plain terms of Section 11.7 of the MIPA, which NGE freely negotiated and executed, and they cannot ask this Court to now ignore or add terms because they would prefer a different outcome.

Defendants further attempt to avoid their breach liability by arguing that Section 11.7 merely prohibits assignment of the MIPA without prior written consent but "does not impair NGE's ability to sell Membership Interests in Major to a successor."  Opp. at 15.  This argument likewise lacks merit and again disregards the plain language of Section 11.7.  Section 11.7 covers two distinct topics:  "Binding Effect" and "Assignment."[5]  The first sentence in Section 11.7 addresses the "Binding Effect" of the MIPA and states that the MIPA is binding upon and inures to the benefit of the parties to the MIPA and "their respective successors and permitted assigns." *Id.* at 67.  The second sentence also covers the "Binding Effect" of the MIPA, stating that the MIPA does not create third party beneficiary rights in anyone who is not a party to the MIPA. *Id.*  The final sentence addresses "Assignment" and states that the MIPA and any of the rights and obligations thereunder may not be assigned without the prior written consent of the other parties to the MIPA.  *Id.*  Therefore, the "successors and permitted assigns" language in the first sentence of Section 11.7 does not in any way modify the unambiguous meaning of the anti-assignment provision in the final sentence of Section 11.7.

In any event, Defendants' sale-to-successors argument is entirely irrelevant as a factual matter because NGE didn't merely *sell* its membership interest in Major Energy to Spark HoldCo, but it also *assigned* the MIPA and all of the rights and obligations thereunder to Spark HoldCo, including but not limited to the escrow rights and cash installment payment obligations. And none of these rights and obligations are covered within the separate Earnout Agreements.

---

[5] Other sections of the MIPA similarly cover two related but distinct subject matters.  *See, e.g.*, *id.* at 65-66 ("11.3   Governing Law; Submission to Jurisdiction.");  *id.* at 66 ("11.4   Entire Agreement; Amendments and Waivers.").

Indeed, Defendants' assignment is conclusively established by the agreements they executed in connection with the assignment, including the Omnibus *Assignment* and Assumption Agreement, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ (emphases added); Defs.' Response to Rule 56.1 Stmt. ¶ 27; *see also id.* ¶ 35 ("It is undisputed that . . . Spark Holdco assumed certain rights and obligations under the Sellers' MIPA . . . .").

In short, Defendants' ambiguity and sale-to-successor arguments lack merit as a matter of fact and law, and do not prevent the Court from finding that NGE's assignment of the MIPA and the rights and obligations thereunder to Spark HoldCo, without the prior written consent of the Sellers, violated the unambiguous terms of Section 11.7 and is void.

## C.    Defendants' Waiver, Ratification, And Estoppel Defenses Likewise Fail As A Matter Of Law

In the face of unambiguous contract language and statements that conclusively establish NGE's breach of Section 11.7 of the MIPA, Defendants distort the factual record and introduce new defense theories that have no merit under established New York law.

Specifically, Defendants contend that the Sellers ratified or waived any breach of Section 11.7 of the MIPA by "knowingly and strategically" accepting the benefits of NGE's assignment to Spark HoldCo. Opp. at 17-22.[6] New York law, however, does not permit a party to successfully assert a ratification defense as a means of overcoming a claim for breach of a non-

---

[6] Plaintiff strongly disagrees with Defendants' characterization of the Sellers' conduct and purported acceptance of the assignment to Spark HoldCo. *See, e.g.*, Opp. at 17-18. Nonetheless, as discussed immediately below, Defendants' distorted presentation of the facts does nothing to change the fact that their waiver, ratification, and estoppel defenses all fail as a matter of well-established New York law.

assignment provision that declares the assignment void.  *See* 6A N.Y. Jur. 2d Assignments § 42 (2d ed. 2019) ("[A] void assignment may not be subsequently ratified.") (citing *Knight v. Knight*, 182 A.D.2d 342, 345 (3d Dep't 1992)); 27 Williston on Contracts § 70:13 (4th ed. 2018) ("A void contract cannot be ratified; it binds no one and is a nullity."); *see also Clark v. Buffalo Wire Works Co.*, 3 F. Supp. 2d 366, 372 n.5 (W.D.N.Y. 1998) ("If, however, a contract is determined invalid because it is void, such contract could never be ratified."); *Aronoff v. Albanese*, 85 A.D.2d 3, 4 (2d Dep't 1982) (reasoning that "a void act is not subject to ratification").[7]  Thus, NGE's assignment to Spark HoldCo without the prior consent of the Sellers immediately became a legal nullity and could not be ratified by subsequent conduct.  Not surprisingly, Defendants fail to cite a single New York case finding ratification in connection with a claimed breach of a non-assignment provision that expressly states that "any attempted assignment without the required consents shall be void."

Defendants likewise cannot claim waiver under applicable New York law.  As Defendants concede, ratification and waiver are similar legal theories.  *See* Opp. at 19-20 (stating that ratification is "a waiver of existing rights") (citation omitted); *see also Banco De La Republica De Colom. v. Bank of N.Y. Mellon*, No. 10-cv-536, 2013 WL 3871419, at *10 n.7 (S.D.N.Y. July 26, 2013) (rejecting argument that "waiver and ratification are different propositions").  Thus, for the same reasons that Defendants cannot prevail on their new ratification defense, they cannot prevail on their new waiver defense.  *See, e.g.*, *Sardanis v.*

---

[7] Defendants' reliance on *John Hancock Life Ins. Co. of N.Y. v. Solomon Baum Irrevocable Fam. Life Ins. Tr.*, No. 16-cv-7071, 2018 WL 6173436 (E.D.N.Y. Nov. 26, 2018) and *Rothschild v. Title Guarantee & Tr. Co.*, 204 N.Y. 458 (N.Y. 1912) is misplaced because neither case examined a contract that was alleged to be void.  *See* Opp. at 20.  Unlike here, *John Hancock* and *Rothschild* addressed whether allegedly fraudulent contracts could be ratified.  Because a fraudulent contract is voidable (not void), and a voidable contract can be ratified, *see, e.g.*, *Reid v. IBM Corp.*, No. 95-cv-1755, 1997 WL 357969, at *10 (S.D.N.Y. June 26, 1997), the precedent Defendants rely on is not instructive.

*Sumitomo Corp.*, 282 A.D.2d 322, 324 (1st Dep't 2001) ("equitable defenses are unavailable when the rights being pressed by a party are based upon a void document").

Nor can Defendants establish their estoppel defense as a matter of applicable New York law.  "No estoppel may arise in any case where the party claiming the estoppel had no right to change position."  57 N.Y. Jur. 2d Estoppel, Ratification, and Waiver § 40 (2d ed. 2019); *Sporre S.A. de C.V. v. Int'l Paper Co.*, No. 99-cv-2638, 1999 WL 1277243, at *4-5 (S.D.N.Y. Dec. 30, 1999) (finding, in an action where defendant assigned its obligations under an agreement to a third party without obtaining prior written consent as required by an anti-assignment clause, that defendant could not establish estoppel because defendant, "in clear breach of the [agreement], *brought the instant scenario upon itself*") (emphasis added); *Draper v. Georgia Props.*, 230 A.D.2d 455, 460 (1st Dep't 1997) (equitable estoppel defense cannot be based on void provision of agreement); *Wilson v. One Ten Duane St. Realty Co.*, 123 A.D.2d 198, 200 (1st Dep't 1987) ("'Equitable estoppel does not operate to create rights otherwise nonexistent; it operates merely to preclude the denial of a right claimed otherwise to have arisen.'") (citation omitted). Defendants—with full knowledge of the terms of Section 11.7 of the MIPA and the Sellers' lack of consent to the dropdown—had no right to change their position and complete NGE's assignment to Spark HoldCo.  Therefore, they cannot rely on an estoppel defense.

Additionally, Defendants' waiver, ratification, and estoppel defenses are independently precluded by the no-waiver clause in Section 11.4 of the MIPA (the "No-Waiver Clause").  The No-Waiver Clause states as follows:

> The waiver by any Party of a breach of any provision of this Agreement shall not operate as, or be construed as, a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right,

power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Ex. 2 at 66 (MIPA § 11.4).  New York courts "uniformly" enforce no-waiver clauses such as the one contained in Section 11.4 of the MIPA and bar parties from asserting waiver and ratification defenses.  *Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 188 (1st Dep't 2007) (no-waiver clause barred waiver defense); *see also Banco De La Republica*, 2013 WL 3871419, at *9-10 (no-waiver clause barred ratification defense); *Chase Manhattan Bank v. Motorola, Inc.*, 184 F. Supp. 2d 384, 395 (S.D.N.Y. 2002) (no-waiver clauses are "routinely enforced under New York law"); *Town of Hempstead v. Inc. Village of Freeport*, 15 A.D.3d 567, 569-70 (2d Dep't 2005) (denying defendant's waiver and estoppel defense on summary judgment where contract contained a no-waiver clause).

In *CS First Boston*, for example, the parties' agreement contained a no-waiver clause stating that "no 'delay on the part of [First Boston] in exercising any of its rights and remedies shall constitute a waiver thereof.'"  *CS First Boston Ltd. v. Behar*, No. 94-cv-7167, 1996 WL 384893, at *4 (S.D.N.Y. July 9, 1996).  The court held that "[a]s required by longstanding case law in this Circuit and in New York, the terms of the Agreement will be enforced, thus precluding [defendant's] arguments of modification and waiver."  *Id.*; *see also, e.g.*, *U.S. Bank Nat'l Assoc. v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 265 (S.D.N.Y. 2017) (finding that defendants' contention that plaintiffs waived their breach of contract claim was "plainly undermined by the 'no-waiver' clauses" within the contract); *Park Irmat Drug Corp. v. Optumrx, Inc.*, 152 F. Supp. 3d 127, 137 (S.D.N.Y. 2016) (refusing to wade into factual dispute regarding defendant's purported waiver because the contract contained a no-waiver clause); *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F. Supp. 2d 682, 709 (S.D.N.Y. 2012) ("When a contract contains a 'no waiver' clause . . . a non-breaching party can continue his contract instead

12

of terminating it based on breaches that previously occurred and yet not waive any of his rights under the contract.").

Similarly, the No-Waiver Clause bars Defendants' estoppel defense.  Indeed, in *Equator International*, the parties' contract contained a no-waiver clause that is nearly identical to the No-Waiver Clause in this case, stating that "[n]o failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder will operate as a waiver thereof; nor will any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right." *Equator Int'l, Inc. v. NH Street Investors, Inc.*, 978 N.Y.S.2d 817, 824 (N.Y. Sup. Ct. 2014).  Noting that no-waiver clauses "have been routinely upheld as being enforceable," the court held that defendant failed to raise triable issues of fact with respect to its estoppel defense, even though defendant alleged that plaintiff failed to take action *for more than five years*. *Id.* at 824-25; *see also, e.g.*, *Weeks Marine, Inc. v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, No. 08-cv-9878, 2011 WL 3796331, at *13 (S.D.N.Y. Aug. 25, 2011) (no-waiver clause barred estoppel defense); *Heisman Trophy Trust v. Smack Apparel Co.*, 637 F. Supp. 2d 146, 158 (S.D.N.Y. 2009) (estoppel defense failed as a matter of law because no-waiver provisions "are enforceable and capable of defeating a laches or estoppel defense"); *Sporre*, 1999 WL 1277243, at *4-5 (no-waiver clause barred estoppel defense).

Thus, Defendants' waiver, ratification, and estoppel defenses all fail as a matter of law and do not prevent the Court from granting Plaintiff's motion for partial summary judgment on Counts II and IV.

## II.   No Genuine Issue Of Fact Remains Regarding Spark's Tortious Interference With The MIPA And Section 7.14(c) Does Not Exculpate Spark's Misconduct

Defendants do not dispute, nor could they, that Spark was fully cognizant of the MIPA and the non-assignment provision contained in Section 11.7 when it completed the assignment

transaction with NGE.   Instead, Defendants seek to challenge Plaintiff's right to summary judgment as to Count IV by relying on their earlier arguments that there was no underlying breach of the MIPA by NGE.  Opp. at 23.  But as demonstrated above and in Plaintiff's opening brief, NGE did breach Section 11.7 of the MIPA and all of Defendants' arguments to the contrary fail as a matter of fact and law.

Faced with this reality, Defendants absurdly claim that Spark should not be liable for tortious interference because it did not "procure" a breach.  *Id.* at 24-25 (citing Black's Law Dictionary).   This assertion is entirely belied by the fact that Spark (1) *paid* NGE for its membership interest in Major Energy and assignment of the rights and obligations under the MIPA and (2) ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████  *See* Ex. 10 at 16-20; Ex. 12; Ex. 13.  This conduct exemplifies a textbook intentional and improper procurement of a breach.

Defendants next argue that Spark should be excused from its tortious behavior in light of the purported exculpatory language contained in Section 7.14(c) of the MIPA.  But contrary to Defendants' contention, Section 7.14(c) does not exculpate Spark from engaging and in bad faith and knowing misconduct, as demonstrated here by Plaintiff.   Indeed, New York public policy forbids enforcement of exculpation clauses where the defendant acted willfully or recklessly.  *See Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 318 (S.D.N.Y. 2010) ("New York courts will decline to enforce a contractual limitation or waiver of liability clause when there is willful or grossly negligent or recklessly indifferent conduct."); *Gold Connection Disc. Jewelers, Inc. v. Am. Dist. Tel. Co.*, 212 A.D.2d 577, 578 (2d Dep't 1995) ("Although such clauses in commercial contracts are enforceable to limit recovery for claims based on ordinary negligence,

they will not preclude recovery in tort or breach of contract where the losses are the result of gross negligence.").  As the New York Court of Appeals has specifically instructed:

> [A]n exculpatory agreement . . . will not exonerate a party from liability under all circumstances . . . .  [I]t will not apply to exemption of willful or grossly negligent acts . . . [or when] the misconduct for which it would grant immunity smacks of intentional wrongdoing.  This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith.  Or when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.

*Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385 (N.Y. 1983); *see also Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 314–15 (S.D.N.Y. 2007); Restatement (Second) of Contracts § 195(a) (1981) ("A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy.").  Thus, while Section 7.14(a) purports to exculpate Spark for certain misconduct, public policy instructs that there are limits to exculpation provisions, and Spark's bad faith and willful misconduct as demonstrated in this case should not be exculpated.

## CONCLUSION

For all the reasons stated above, Plaintiff's motion for partial summary judgment should be granted in its entirety.

Dated: February 28, 2019
New York, New York

KING & SPALDING LLP

_/s/ Israel Dahan_
Israel Dahan
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com
rgabay@kslaw.com

Chelsea J. Corey
KING & SPALDING LLP
300 South Tryon Street
Suite 1700
Charlotte, NC 28202
Telephone No.:  (704) 503-2575
ccorey@kslaw.com

_Counsel for Plaintiff_

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 28, 2019, I electronically filed the foregoing Notice of Appearance with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

/s/ *Israel Dahan*
Israel Dahan