UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SAUL HOROWITZ, as Sellers' Representative,

                Plaintiff,

v.

NATIONAL GAS & ELECTRIC, LLC and SPARK ENERGY, INC.,

                Defendants.

Civ. No. 17-CV-7742 (JPO)

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1
SEPARATE STATEMENT OF ADDITIONAL MATERIAL FACTS
AS TO WHICH THERE EXISTS A GENUINE ISSUE**

Pursuant to Civil Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Plaintiff Saul Horowitz, as Sellers' Representative, hereby submits this response to Defendants' Rule 56.1 Separate Statement of Additional Material Facts as to Which There Exists a Genuine Issue in accordance with the numbered paragraphs thereof.

**PLAINTIFF'S RESPONSES**

38. In December 2014, Spark sent Sellers a bid to purchase 100% of Sellers' Membership Interests in Major. Ex. A1 (December 10, 2014 email chain).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes the statement insofar as Exhibit A1 does not support the assertion that Spark "sent Sellers a bid to purchase 100% of Sellers' Membership Interest in Major," as the "Bid letter" referenced in Exhibit A1 is not included in the exhibit. As a factual matter, Exhibit A1 speaks for itself.

39.     After talks between Spark and Sellers were tabled, in November 2015 NGE approached Sellers about the potential acquisition of their Membership Interests in Major. Plaintiff's Statement of Undisputed Facts, ¶ 3.

**RESPONSE**: Plaintiff does not dispute that in or about November 2015, NGE, a private entity, approached the Sellers regarding the possible acquisition of the Sellers' combined 100% membership interest in Major Energy.  Plaintiff disputes Defendants' remaining characterizations.

40.     In early 2016, New York proposed regulations that would govern energy sales to consumers, which NGE and Sellers agreed could negatively affect Major's customer count and Adjusted EBITDA for Major's core market. Ex. B1 (March 15, 2016 email chain among Sellers).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment.  Plaintiff disputes that Exhibit B1 supports the statement above.  As a factual matter, Exhibit B1 speaks for itself.

41.     Consequently, the parties agreed to defer $35 million of the sales price in the form of Contingent Payments over a 33-month period following the anticipated closing, in a contingent structure that "balance[d] the risk between Major [Sellers] and NGE in a downside scenario." Dkt. 54-3 (Earnout Agreement) at 12.

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment.  Plaintiff does not dispute that the quoted language appears on page 12 of the Earnout Agreement.  As a factual matter, the Earnout Agreement speaks for itself.  The remainder of Defendants' characterizations are disputed as the Earnout Agreement does not support the propositions and assertions in the statement.

42. On or about April 15, 2016, NGE and the Sellers closed the transaction and NGE became the owner of 100% of the Membership Interests of Major Energy. Am. Compl. ¶ 30.

**RESPONSE**: Undisputed.

43. Section 7.14(c) of the MIPA states as follows:

> All claims or causes of action (whether in contract or in tort, in law or in equity) that may be based upon, arise out of, or relate to this Agreement, or the negotiation, execution or performance of this Agreement (including any representation or warranty made in connection with this Agreement or as an inducement to enter into this Agreement), may be made only against the Persons that are Parties hereto. No Person who is not a named party to this Agreement, including any Affiliate, agent, attorney, or representative of any Party (such Persons, "Non-Party Affiliates"), shall have any liability (whether in contract or tort, in law or in equity, or based upon any theory that seeks to impose liability of an entity party against its owners or Affiliates) for any obligations or liabilities arising under, in connection with, or related to this Agreement or for any claim based on, in respect of, or by reason of this Agreement or its negotiation or execution, and each Party waives and releases all such liabilities, claims, and obligations against any such Non-Party Affiliates. Non-Party Affiliates are expressly intended as third party beneficiaries of this provision of this Agreement.

Dkt. 54-2 (MIPA) § 7.14(c).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff does not dispute that the quoted language appears in Section 7.14(c) of the MIPA. As a factual matter, the MIPA speaks for itself.

44. The MIPA expressly contemplates assignment and applies to both successors and assigns of the parties. *Id*. § 11.7.

**RESPONSE**: Plaintiff disputes Defendants' characterization of Section 11.7 of the MIPA. As a factual matter, the unambiguous language of Section 11.7 of the MIPA speaks for itself.

45. The MIPA expressly incorporates the Earnout Agreement. *Id*. p.3 and § 1.2(a)(ii).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff does not dispute that the MIPA incorporates the Earnout Agreement. As a factual matter, the language of Section 1.2(a)(ii) of the MIPA speaks for itself.

46. The Earnout Agreement is expressly assignable to Affiliates, and other parties need not consent in such assignment. Dkt. 54-3 § 3.1 (Executive Earnout Agreement).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff does not dispute that the Earnout Agreement provides that it "shall not be assignable by either Party without the prior written consent of the other Parties, except as to Affiliates or in the event of a Buyer Change of Control." As a factual matter, the language of Section 3.1 of the Earnout Agreement speaks for itself. Plaintiff disputes that Docket Entry 54-3 is the "Executive Earnout Agreement."

47. Section 3.1 of the Earnout Agreement provides that "[a]ll of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective and permitted successors and assigns. This Agreement shall not be assignable without the prior written consent of the other Parties, except as to Affiliates or in the event of a Buyer Change of Control." Dkt. 54-3 § 3.1 (Executive Earnout Agreement).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff does not dispute that the quoted language appears in Section 3.1 of the Earnout Agreement, which speaks for itself. Plaintiff disputes that Docket Entry 54-3 is the "Executive Earnout Agreement."

48.     The Earnout Agreement defines Affiliate to include "any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person." *Id.* § 1.1.

**RESPONSE**:  This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment.  Plaintiff does not dispute that the quoted language appears in Section 1.1 of the Earnout Agreement, which speaks for itself.  Plaintiff disputes that Docket Entry 54-3 is the "Executive Earnout Agreement."

49.     Spark Holdco is an Affiliate of NGE. Ex. A (Decl. of Robert Lane); Am. Compl. (Dkt. 22) ¶¶ 11-12.

**RESPONSE**:  This paragraph states a legal conclusion, which is impermissible for a Rule 56.1 statement and no response is required.  In any event, as Section 11.7 of the MIPA does not provide exceptions for affiliates, this is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment.

50.     The Earnout Agreement provides that NGE or NGE's Affiliate "shall have the discretion to operate the Business of the Companies as [NGE or Affiliate] deems appropriate," subject to certain good-faith obligations. Dkt. 54-3 § 2.7.

**RESPONSE**:  This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment.  Plaintiff does not dispute that the quoted language appears in Section 2.7 of the Earnout Agreement, which speaks for itself.  Plaintiff disputes Defendants' characterization of the remaining text of Section 2.7 as "certain good-faith obligations."

51.     During NGE's negotiations with Sellers, NGE was transparent about its ultimate plans for a dropdown of Major Energy to Spark Holdco. Indeed, it was public knowledge that, at

that time, NGE's purpose was to purchase companies and drop them into Spark. Ex. A2 (excerpt from SEI's 2015 10-K).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes Defendants' characterizations of the negotiations among the parties. As a factual matter, Exhibit A2 speaks for itself.

52. Sellers chose to close the sale of Seller's Membership Interests in Major Energy to NGE on April 15, 2016, even though they were aware that the dropdown to Spark would occur shortly after closing. Ex. B2 (April 8, 2016 email chain including Brandon Hoover (NGE's Controller) and Major executives and Sellers) ███████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes that Exhibit B2 supports the assertion that "Sellers . . . were aware that the dropdown to Spark would occur shortly after closing." Not all Sellers are included on the email chain in Exhibit B2 and receipt of an email does not necessarily evidence awareness. Plaintiff does not dispute that the quoted language appears in Exhibit B2 ████████████████████████████████████████ ████████████████████████████████████ As a factual matter, Exhibit B2 speaks for itself.

53. When the transfer of ownership from NGE to SEI's subsidiary, Spark Holdco, was announced within weeks after the closing of the sale of Major to NGE, Sellers participated in creating, revising, and issuing press releases for Spark and Major. Sellers helped steward the dropdown through closing. Exs. A3, B3, B4, B5, and B6.

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes Defendants' characterization of the Sellers' post-dropdown conduct and disputes that Exhibits A3, B3, B4, B5, and B6 support Defendants' statement.

54. By email dated June 9, 2016, Horowitz informed Keith Maxwell that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. B6.

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff does not dispute that the quoted language appears in Exhibit B6. Plaintiff disputes the suggestion that these selective quotes convey the full import of Plaintiff's email to Keith Maxwell on June 9, 2016. As a factual matter, Exhibit B6 speaks for itself.

55. That same e-mail ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id*.

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff does not dispute that the quoted language appears in Exhibit B6. Plaintiff disputes the suggestion that these selective quotes convey the full import of Plaintiff's email to Keith Maxwell on June 9, 2016. As a factual matter, Exhibit B6 speaks for itself.

56. On August 22, 2016, Levi Moeller (Major's COO) admitted that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Ex. A4 (August 22, 2016 email from Moeller).

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes the suggestion that these selective quotes convey the full import of Levi Moeller's email or that Moeller "admitted" anything to Paul Konikowski, David Sobel, Todd Gibson, Dan Alper, and Dave Hennekes on August 22, 2016. Plaintiff does not dispute that the quoted language appears in Exhibit A4. As a factual matter, Exhibit A4 speaks for itself.

57. On August 23, 2016, Spark HoldCo's purchase from NGE of the Membership Interests in Major Energy closed. Plaintiff's Statement of Undisputed Facts, ¶ 25.

**RESPONSE**: Undisputed.

58. On or about June 9, 2017, Sellers acknowledged that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes that Exhibit B16 supports

the assertion that "Sellers acknowledged that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Plaintiff does not dispute that the quoted language appears in Exhibit B16. As a factual matter, Exhibit B16 speaks for itself.

59. Sellers repeatedly pursued from Spark an early buyout of the Contingent Payments and during that time sought and accepted numerous benefits from Spark, including, but not limited to the following examples:

    a. Millions of dollars in Contingent Payments (Ex. B17)

    b. Assistance toward expanding Major's sales territory (Exs. A5 and A6)

    c. Provision of new customers for Major (Ex. A13)

    d. Retention of executives for Major (Ex. B20)

    e. Provision of a favorably-priced energy supply agreement (Ex. A8)

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes Defendants' characterization of how Major Energy was operated post dropdown and the purported "benefits" Major Energy received from Spark. Plaintiff also disputes that any of the cited exhibits supports the assertion that Sellers "repeatedly pursued" a buyout from Spark.

60. Sellers' first request to unwind or rescind the dropdown was made in its First Amended Complaint filed in this action in December 2017. Dkt. 22.

**RESPONSE**: This is not a material fact that is relevant to the Court's disposition of Plaintiff's Motion for Partial Summary Judgment. Plaintiff disputes that his "first request to unwind or rescind the dropdown was made in [his] First Amended Complaint." In his initial complaint, filed on October 10, 2017, Plaintiff stated that, in accordance with the unambiguous terms of Section 11.7 of the MIPA, NGE's purported assignment to Spark HoldCo "was

improper and should be rendered void" and requested in its prayer for relief "such other and further relief as may be just and proper."  ECF No. 1.

Dated: New York, New York
February 28, 2019

                    KING & SPALDING LLP

                    By: */s/ Israel Dahan*
                    Israel Dahan
                    Ryan Gabay
                    KING & SPALDING LLP
                    1185 Avenue of the Americas
                    New York, NY 10036
                    Telephone No.:  (212) 556-2114
                    idahan@kslaw.com
                    rgabay@kslaw.com

                    Chelsea J. Corey
                    KING & SPALDING LLP
                    300 South Tryon Street
                    Suite 1700
                    Charlotte, NC 28202
                    Telephone No.:  (704) 503-2575
                    ccorey@kslaw.com

                    *Counsel for Plaintiff*