UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUL HOROWITZ, as Sellers' Representative,<br><br>                      Plaintiff,<br>v.<br><br>NATIONAL GAS & ELECTRIC, LLC and SPARK ENERGY, INC.,<br><br>                      Defendants. | Civ. No. 17-CV-7742 (JPO) |

## REBUTTAL WITNESS STATEMENT OF DANIEL ALPER

Plaintiff Saul Horowitz, as Sellers' Representative, by and through his undersigned counsel, hereby attaches the sworn Rebuttal Witness Statement of Daniel Alper. Mr. Alper reserves his right to amend or supplement his rebuttal witness statement and to rely on additional exhibits not cited therein. No waiver of privilege is made or intended to be made in these rebuttal witness statements.

Plaintiff reserves the right to present additional rebuttal witnesses at trial or submit additional rebuttal witness statements in advance of trial should Defendants National Gas & Electric, LLC or Spark Energy, Inc. introduce new issues ripe for rebuttal.

January 3, 2020

Respectfully submitted,

/s/ Israel Dahan
Israel Dahan
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.: (212) 556-2114
idahan@kslaw.com
rgabay@kslaw.com

Chelsea J. Corey
KING & SPALDING LLP
300 South Tryon Street, Suite 1700
Charlotte, NC 28202
Telephone No.:  (704) 503-2575
ccorey@kslaw.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUL HOROWITZ, as Sellers' Representative,<br><br>        Plaintiff,<br>  v.<br><br>NATIONAL GAS & ELECTRIC, LLC and SPARK ENERGY, INC.,<br><br>        Defendants. | Civ. No. 17-CV-7742 (JPO) |

## **REBUTTAL WITNESS STATEMENT OF DAN ALPER**

1. I have reviewed the witness statements Defendants submitted on behalf of Michael Kuznar ("Kuznar Statement") and Nathan Kroeker ("Kroeker Statement"), both dated December 23, 2019. The Kuznar Statement and Kroeker Statement contain false or misleading statements, particularly with respect to their respective interactions with me during the 2016 and early 2017 period.

2. Specifically, Mr. Kuznar's and Mr. Kroeker's description of the genesis of the EMS integration project and my purported push for the project is inaccurate.[1] I only pushed for the EMS integration project and only agreed to help with it at the request of Keith Maxwell. Additionally, Mr. Kroeker's assertion, or insinuation, that I agreed that the "EMS Addback" of $250,000 was to cover any and all harm caused to Major Energy from the EMS project is not true.[2] The discussion of the "EMS Addback" was simply to reimburse costs and expenses incurred by Major Energy from the EMS project and had nothing to do with any other business and productivity loss sustained by Major Energy from the multi-month distraction of the EMS project.

---

[1] Kroeker Statement at ¶¶ 143-145; Kuznar Statement at ¶¶ 15-17, 19, 23.
[2] Kroeker Statement at ¶¶ 148-149.

1

3.     I also note that Mr. Kroeker states that he reviewed my witness statement and found no mention of the $250,000 "EMS Addback."[3]  I discussed this add-back in paragraph 169 of my Witness Statement and described what it was (and was not) meant to reflect.

4.     Mr. Kroeker's discussion of the negotiations between NGE[4] and the Sellers and the negotiations of the relevant deal documents, including what NGE and the Sellers "intended" in the Earnout Agreement,[5] are not accurate.  I note that Mr. Kroeker, as he admits, was not even involved in such negotiations.[6]

5.     For example, Mr. Kroeker states that I "implied that Sellers felt pressured to raise Major Energy's projections" but that the "Sellers were still willing to go along with those projections with the expectation that there was minimal downside."[7]  While, as a result of Mr. Kroeker's loose language in the Kroeker Statement it is entirely unclear as to whether Mr. Kroeker is asserting that I made such statements or implications to him, Mr. Kroeker is mistaken that I ever made such statements to *anyone*—especially Mr. Kroeker who was not involved in the negotiations with NGE or the Stifel presentation.  While slightly higher projections were contained in the presentation that was made to Stifel, those higher projections were (1) explicitly requested by NGE and (2) not ultimately used as the targets for the Contingent Payments.  I further note, that while Mr. Kroeker is not an attorney and, by his own admission, was not involved in negotiating the MIPA, Earnout Agreement, or Executive Earnout Agreement, he offers his own self-serving interpretation of the terms of those documents.

---

[3] Kroeker Statement at ¶ 148.
[4] Capitalized terms not defined herein are adopted from my Witness Statement dated December 13, 2016.
[5] Kroeker Statement at ¶¶ 52-83.
[6] *Id.* at ¶¶ 61; 63.
[7] *Id.* at ¶ 60.

6. Additionally, Mr. Kroeker's description of Spark's purported transparency concerning the Dropdown and Major Energy management's enthusiasm for the Dropdown is also inaccurate, as I addressed at length in my Witness Statement.[8]

7. As I noted above, I will be prepared to further address the foregoing points and the Kuznar Statement and Kroeker Statement as trial.

---

[8] Alper Witness Statement at ¶¶ 123-129.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
       January 3, 2020

_____
Dan Alper